[No. 31270.   Department One.   August 22, 1950.]

MONROE STEPHENS, *Respondent*, v. O. M. NELSON *et al., Appellants.*[1]

Reported in 221 P. (2d) 520.

*O. M. Nelson, pro se.*

*Clark W. Adams,* for appellant M. O. Nelson.

*Monroe Stephens, pro se.*

BEALS, J.—Plaintiff, Monroe Stephens, instituted this action, asking for a decree directing specific performance of a contract to sell real estate. After the trial, the court entered a decree in plaintiff's favor, providing for specific performance of the following written agreement between the parties:

"Whereas the undersigned Monroe Stephens and O. M. Nelson are contemplating purchasing the property of Mrs. Effie M. Simmons on First Street in Montesano, and said purchases are being consummated simultaneously and mutually, Mr. Nelson is to acquire a warranty deed to portion of lot 6 which he does not at present own, being about 20 feet in width, and Stephens is acquiring a contract for all of lot 5 both in block 4 of Byles addition.

"As a part of these purchases Mr. Nelson, who is acting as attorney for Mrs. Simmons in the matter of drawing papers, etc., agrees that he will, upon receipt of his deed, in conjunction with his wife, convey to Mr. Stephens the fee by warranty deed to all of said strip except the north 15 feet thereof, and also convey to Mr. Stephens in said deed a twenty-year easement over the south 10 feet of said 15 foot strip which he is reserving, said 10 foot driveway to be kept open, clear and free for the exclusive use of the properties which these parties or either of them now own or are acquiring on the west side of First street.

"As his part of this contract Mr. Stephens is to pay Mr. Nelson one-fourth of the amount which Mr. Nelson pays to Mrs. Simmons for said 20 foot strip and agrees to, within one year at the latest, grade said driveway out to such an extent as to enable automobiles to travel thereon from First street.

"Other work on said driveway may be done mutually when desired and upon terms then agreed upon.

"This Dec. 4th, 1946.

"[Signed] Monroe Stephens
"[signed] O. M. Nelson"

From this decree, defendants O. M. Nelson and Melinda O. Nelson, his wife, have appealed, making the following assignments of error:

"(1) It was error for the court to decide in favor of the plaintiff.

"(2) It was error for the court to enter judgment in favor of the plaintiff.

"(3) It was error for the court to overrule defendants' motion for a new trial and decide against defendants."

The assignments of error are all based upon the decree entered, and will be discussed together.

Respondent and appellant O. M. Nelson are both lawyers, practicing in the town of Montesano.

For some years, appellants had owned a tract of real estate in Montesano, described as the north thirty feet of lot 6, block 4, of Byles Addition. Upon this tract, which fronted on First street, Mr. Nelson had established his law office. The lots here in question are fifty feet in width.

Mrs. Effie M. Simmons, an unmarried woman, owned the south twenty feet of lot 6 and all of lot 5, a tract of land seventy feet in width. She was a nonresident of the state and, while willing to sell all of the property, refused to sell a portion thereof. Respondent and Mr. Nelson were corresponding with Mrs. Simmons in connection with the purchase of her property. November 29, 1946, she wrote to appellant and to respondent, stating that, if respondent accepted her offer to sell lot 5 of the block above described, appellant could purchase the other portion of the tract which she owned, described as the south twenty feet of lot 6, and could act as her attorney in the preparation of the necessary documents. Appellant and respondent then signed the foregoing agreement.

Later, one Arthur M. Furnia procured from Mrs. Simmons a deed to lot 5, and Mrs. Simmons also conveyed by deed the south twenty feet of lot 6 to Mrs. Nelson, named in the deed as M. O. Nelson. Thereafter, respondent instituted an action against Mrs. Simmons and Furnia, asking for a decree directing specific performance of his contract to purchase that lot. Respondent prevailed in that action (in which appellant

O. M. Nelson represented Mrs. Simmons) and, in due time, obtained title to the property.

Respondent then instituted this action against appellants, who contend (1) that, as the contract between the parties to this action was not signed by Mrs. Nelson, specific performance thereof will not be enforced against her or the marital community, the contract in question referring to land to be acquired and Mrs. Nelson having subsequently acquired the land by deed to her individually, and, as she contends, as her separate estate, and (2) that the description of the property contained in the agreement is insufficient to support the decree entered.

In this connection, appellants rely upon Rem. Rev. Stat., § 6893 [P.P.C. § 434-29], the pertinent portion of which reads as follows:

"The husband has the management and control of the community real property, but he shall not sell, convey, or encumber the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife:   . . ."

The presumption is that real property acquired by either husband or wife during coverture is community property, and the burden rests on one asserting the contrary to show that it is the separate property of the spouse asserting the claim. Rem. Rev. Stat., §§ 6890, 6891, 6892 [P.P.C. §§ 434-25, -9, -27]. *Reeve v. Arnoldo,* 176 Wash. 679, 30 P. (2d) 943; *Hughes v. Boyer,* 5 Wn. (2d) 81, 104 P. (2d) 760; *Beakley v. Bremerton,* 5 Wn. (2d) 670, 105 P. (2d) 40; *E. I. DuPont de Nemours & Co. v. Garrison,* 13 Wn. (2d) 170, 124 P. (2d) 939; *In re Dewey's Estate,* 13 Wn. (2d) 220, 124 P. (2d) 805; *Jones v. Davis,* 15 Wn. (2d) 567, 131 P. (2d) 433.

In the case of *Konnerup v. Frandsen,* 8 Wash. 551, 36 Pac. 493, an action brought for the purpose of procuring a decree directing specific performance of a contract for the sale of real estate signed by the husband alone, this court reversed a judgment of the superior court entered upon the granting

of defendant's motion to dismiss the action, made at the opening of plaintiff's case. This court held that the allegations of the complaint, to the effect that the contract was made with the full knowledge, consent, and ratification of the wife and that the wife had assented to the contract until after the plaintiff had cleared the land, stated a cause of action, and directed that the trial should proceed.

In *Bowman v. Hardgrove,* 200 Wash. 78, 93 P. (2d) 303, this court, in discussing a matter similar to that here presented, said:

"The question is whether Mrs. Bowman consented to the making of the lease, or subsequently ratified it. . . . Each case must depend very largely upon its own facts."

In *Campbell v. Webber,* 29 Wn. (2d) 516, 188 P. (2d) 130, an action for the enforcement of an agreement to sell real estate signed by the husband alone, a decree of the superior court directing specific performance of the agreement was affirmed, although it was admitted that the wife had not signed the contract. The trial court made the following finding:

" 'That said earnest money receipt and agreement between the parties was executed only by defendant R. C. Webber and not by his wife. That said wife, however, participated in the negotiations for said sale, discussed the terms of same with plaintiffs, was present during the negotiations between plaintiffs and defendant R. C. Webber, and had full knowledge of the agreement between them. That when plaintiffs and defendant R. C. Webber had finally agreed to the terms of said sale, said defendant wife, in the presence of all of them, stated to defendant R. C. Webber that "if it is satisfactory to you, it is satisfactory to me." ' "

In the case of *In re Horse Heaven Irrigation Dist.,* 19 Wn. (2d) 89, 141 P. (2d) 400, this court said:

"We have adopted the rule that, if a husband enters into a contract to sell or lease community real estate without his wife joining therein, and she either consents thereto or subsequently sanctions or ratifies his act, neither she nor the community may thereafter disaffirm it. [Citing cases.]"

■■ In the cases above referred to, it appeared that either some cash consideration had been paid for the prop-

erty or work had been done on the land by the purchaser. In the case at bar, no part of the consideration had been paid, but respondent had entered upon the tract in question and had accomplished some clearing thereon, of which Mrs. Nelson admitted that she had personal knowledge, testifying: "Well, I didn't see him [respondent] doing it, but I presumed it was he."

At all times herein referred to, Mrs. Nelson acted as her husband's secretary, being his sole office assistant. The tract of land in question was immediately adjoining the Nelson property, being a portion of the same platted lot.

By their testimony, appellants sought to show that the twenty-foot strip of land here in question was Mrs. Nelson's separate property, but the trial court held otherwise, expressing the opinion that appellants' contention was without any substantial support in the evidence. We agree with the opinion of the trial court upon this phase of the case.

The deed from Mrs. Simmons to appellant M. O. Nelson bears date February 25, 1947, and was promptly delivered, although not recorded until March 25, 1949, shortly before this trial opened.

Mrs. Nelson, testifying on behalf of appellants, stated that she worked as her husband's stenographer; that she purchased the south twenty feet of lot 6, *supra,* paying for it in cash with her "separate money"; and that she knew nothing concerning the written memorandum above quoted, signed by her husband, until October, 1948. She testified that she and Mr. Nelson were married in 1915, and that, since their marriage, he had generally represented her in connection with her property.

Correspondence between appellants and Mrs. Simmons is in evidence, and the trial court was convinced, his opinion being supported by the record, that both appellants knew of the dealings between all of the parties and Mrs. Simmons and that appellant M. O. Nelson knew of the written agreement between respondent and Mr. Nelson, and held that the community composed of appellants as husband and wife was bound thereby.

At the close of the case, the court gave a brief oral summary of the evidence, stating:

"I don't believe this defendant, M. O. Nelson, was ignorant of the correspondence and the various steps in this transaction—the correspondence that was going on between Simmons and her husband. She was exceedingly reluctant as a witness, and her manner and demeanor is something a trial Judge should take into consideration as much as he should instruct the jury to do if the matter was submitted to a jury."

After some discussion between the court and counsel, the court continued:

"I thought she was seemingly evasive and reluctant all through her testimony. I don't think it was an act of candor or frankness at any point."

Later, the court delivered a formal memorandum opinion which is contained in the statement of facts. In the course of this opinion, the court said:

"A rather devious, and certainly to the court unsatisfactory, effort was made by Defendants, to show by their own testimony only, that (1) the funds used for the purchase of the South 20 feet of Lot Six (6) were the separate property of Defendant wife, and (2) that the Defendant wife was not privy to the negotiations and commitments of Defendant husband. It is unnecessary to outline this testimony, suffice it to say that in no particular did it carry conviction to the Court's mind nor rise to the respectability of evidence.

"It is clear in the Court's mind that the course of conduct on the part of the Defendants was actuated by animus which descended to the level of a conspiracy against the Plaintiff. Yet it is not necessary to reach a conclusion upon that premise.

"The Defendants did not sustain the burden of demonstrating that the purchase price was paid with the wife's separate funds. Their own testimony disclosed that the defendant husband was the agent and advisor of the Defendant wife in connection with transactions which were claimed to be separate.

"All the testimony when examined demonstrates that scienter must preclude the Defendant wife from taking the benefits of the agreement and denying the rights of the Plaintiff."

In reaching the foregoing conclusion, the trial court referred to two of our decisions, *Peterson v. Hicks,* 43 Wash. 412, 86 Pac. 634, and *Lucci v. Lucci,* 2 Wn. (2d) 624, 99 P. (2d) 393.

In the case first cited, this court reversed a judgment of the superior court in favor of the defendant, and held, in part, that the defendant wife had ratified certain acts of her husband by availing herself of a profit secured thereby, and was "in no position to profit by his bargain, and still refuse specific performance."

In the second of the cases cited, we held that, in an action against a husband and wife for money loaned, where it appeared that the wife had contracted the debt sued upon in connection with the operation of a grocery store conducted for the benefit of the marital community, and that the husband knew of the loans and accepted the benefits thereof, judgment was properly rendered against the husband individually, as well as against the community.

The two cases are not similar on the facts, but the legal principles approved by this court render them in point.

Appellants cite a number of our decisions, including *Holyoke v. Jackson,* 3 Wash. Terr. 235, 3 Pac. 841, in which it was held that a husband could not bind the community by his contract for the sale of community real estate, and that a vendee under such a contract, with notice of the fact that the property belonged to the community, could not recover damages for breach of the contract.

This court has repeatedly referred to and followed the case cited, but the principle therein announced is subject to exceptions, which this court has recognized in the cases hereinabove cited.

Finally, appellants contend that the description of the property contained in the written agreement signed by respondent and appellant O. M. Nelson is insufficient, in that it does not name the county and state in which the property referred to is located.

In support of this contention, appellants cite the case of *Martin v. Seigel,* 35 Wn. (2d) 223, 212 P. (2d) 107, in which we held that a contract for the sale of platted real

.estate may not be enforced unless the contract contains "the description of such property by the correct lot number(s), block number, addition, city, county and state."

From the evidence in the case at bar, it appears that respondent, under the written agreement between him and appellant O. M. Nelson, entered into possession of the real property described therein. *Mudgett v. Clay,* 5 Wash. 103, 31 Pac. 424; *Bendon v. Parfit,* 74 Wash. 645, 134 Pac. 185.

In *Lautenschlager v. Smith,* 155 Wash. 328, 284 Pac. 87, it was held that taking possession of an unimproved 550-acre tract, putting stock thereon, and summer-fallowing it, was a sufficient part performance to remove an oral lease from the operation of the statute of frauds. The court observed that, under the circumstances, "the appellant took about as complete possession of it as he could."

In the case at bar, the tract of land in question is merely a strip five feet in width extending along the south side of lot 6. Respondent testified that, when he purchased lot 5, that lot and the adjoining fifteen feet of lot 6 were covered with brush; that he promptly commenced clearing this brush from the "back of lot 5" and from the five-foot strip, also, to some extent, clearing the ten-foot strip of lot 6, upon which he was to possess an easement. He further testified that he continued this task, sometimes assisted by a neighbor, until the brush was removed not only from lot 5 but also from the five-foot strip of lot 6, and from the ten feet of that lot in connection with which he was to enjoy an easement.

From respondent's evidence, it appears that he cleared the brush from the strip and the portion of lot 6 in connection with which he was to have an easement, treating it as part of his adjoining property. There were no improvements upon the land, which in its then condition was not susceptible of any physical improvement other than clearing.

The trial court did not err in denying appellants' motion for a new trial, and the decree appealed from is affirmed.

SIMPSON, C. J., SCHWELLENBACH, GRADY, and DONWORTH, JJ., concur.