ELSIE KEIL MATHISEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44363.   Filed July 30, 1954.

*Ralph B. Potts, Esq.,* for the petitioner.

*Wilford H. Payne, Esq.,* and *Francis J. Butler, Esq.,* for the respondent.

OPINION.

OPPER, *Judge:* It cannot be questioned that petitioner was not, in terms, a party to the *Western Construction Co.* case [1] upon which she relies for her plea of res judicata or estoppel by judgment. Identity of parties is a prerequisite to the success of that contention. *American Range Lines, Inc.*, 17 T. C. 764, affirmed on this issue (C. A. 2) 200 F. 2d 844. Nor can she have been in privity with her father or any other individual party to the litigation, since her interest was not derived from him or anyone else on her own version of the facts. The remaining ground urged is that this was class litigation and, her interests being affected, she was in substance a party. 30 Am. Jur. 957, 962, 963. But there were two issues in the *Western Construction Co.* proceeding. [2] The first, a claim by respondent that it was an associa-

---

[1] 14 T. C. 453, affirmed per curiam (C. A. 9) 191 F. 2d 401.

[2] "Petitioner Western Construction Co. was created as a limited partnership under the laws of the State of Washington in 1942 and again in 1943. The certificate of formation of the partnership included petitioners J. A., George, and Albin Johnson as the general partners and their several adult sons and daughters as the limited partners. *Held*, on the evidence, petitioner Western Construction Co. does not resemble an association in corporate form and is, therefore, not taxable as such (*Glensder Textile Co.*, 46 B. T. A. 176, followed) ; *held, further,* the Western Construction Co. is a bona fide partnership composed of the three Johnson brothers and their several children as set out in the certificate of formation of the partnership and is recognized as such for tax purposes (*John A. Morris*, 13 T. C. 1020, folowed)." (Headnote, *Western Construction Co., supra.*)

tion taxable as a corporation did, indeed, indirectly affect her, though the decision in any event was conclusive as to her interests only by derivation, as a stockholder's fortunes are identified with those of his corporation. See *American Range Lines, Inc., supra.* But the second issue bound her not at all. Only the general partners who were there charged with the entire income of the venture, could have lost— or won—as a consequence of the litigation. The tax liabilities there in question, did not include that of petitioner for any year, even indirectly.[3] We cannot see how she was a member of a "class" involved in the proceeding, and thus a party herself. Even her property rights, as distinguished from her tax liability, were not affected, so much as indirectly. Her father could have been held taxable in spite of her legal right to the income. *Commissioner* v. *Tower*, 327 U. S. 280; *Lusthaus* v. *Commissioner*, 327 U. S. 293.

We agree with petitioner that if any principle of repose applies, it would presumably be that of res judicata, rather than mere collateral estoppel. Unlike most cases in this field, see, e. g., *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620, and *Commissioner* v. *Sunnen*, 333 U. S. 591, the years involved in the prior litigation, and those presently in controversy are the same. But the issues were, nevertheless, different because, as we have said, petitioner's individual tax liability was not there litigated, nor could it have been. No deficiency determined against her was being contested. Secs. 271, 272, I. R. C.

This is more like a restatement of the conclusion previously arrived at that petitioner was not a party directly or by privity. In the tax field this would ordinarily require privity by title or estate, or, as in the case of a transferee, by identity of taxable status. See, e. g., *First National Bank of Chicago* v. *Commissioner*, (C. A. 7) 112 F. 2d 260, certiorari denied 311 U. S. 691. And it is unfortunate that respondent chooses not to argue the point but only to preserve it. He says merely:

> Because it has been shown by the respondent that the doctrines of res judicata or collateral estoppel do not apply to this proceeding—since the issues here involved are so obviously different—no time has been devoted in this brief to the question of whether petitioner was a party or in privy to the first proceeding, but the respondent here submits that this question is not without doubt and for that reason it is by no means conceded. See, *American Range Lines, Inc.* (1951) 17 T. C. 764, modified (C. A. 2d, 1952) 200 F. 2d 844, * * * [Respondent's brief, p. 30.]

Nevertheless, it was in connection with the second, or partnership, issue that the findings were made upon which petitioner seeks to invoke the plea of res judicata. And they are too general to be helpful, especially if it is merely an estoppel by judgment upon which she relies. The statements as quoted in petitioner's brief are:

---

[3] Petitioner's claims of overpayment are in essence a recognition that petitioner's individual tax liability was not determined in the prior proceeding but is in issue here.

While none of the husbands of the Johnson daughters signed any of these notes given to the general partners, generally speaking the notes were signed by the wives with the knowledge and consent of their husbands.

Though the sons-in-law did not sign the notes, they treated these obligations as resting on their community property.

\*     \*     \*     \*     \*     \*     \*

The partnership profits were regarded by all of the limited partners and their spouses as community property and in the filing of their returns for the years 1942 to 1945, inclusive, such profits were divided in the returns of the spouses on a community property basis the same as other income.

\*     \*     \*     \*     \*     \*     \*

Partnership checks representing distribution of profits were sometimes made out to the limited partners and sometimes to the spouses of the limited partners, depending upon which one requested the money. It was regarded as a family business and no distinction was made as between limited partners or his or her spouse when it came to distributing the profits. [Petitioner's brief, pp. 9, 10.]

It seems manifest that if these findings were material at all, it could only be connection with the second issue—that of the liability of the general partners for tax on all the partnership income. As to this issue, we have already noted that petitioner—and hence respondent here—was not bound even indirectly. It matters not therefore whether we conclude that res judicata is not applicable because petitioner was not a party to the prior litigation, or that collateral estoppel cannot be invoked because, the claim being different, no facts pertinent here were actually litigated and decided. See *The Evergreens* v. *Nunan*, (C. A. 2) 141 F. 2d 927, certiorari denied 323 U. S. 720. In either event, the present question is still open, in our opinion, for decision now.

On the merits, the law of the State of Washington, in which the marital community existed, prohibits the wife from obligating the credit of the community under such circumstances as this. *Wilbeck* v. *Conway*, 141 Wash. 250, 251 Pac. 282. When she alone signed and delivered to her father the original $10,000 note which furnished her with the funds to buy her partnership interest it could purchase only her separate property. Unless, as she contends, the note became a community obligation by reason of the acquiescence, acknowledgment, or ratification of her husband, the situation would accordingly appear to be governed by *E. C. Olson*, 10 T. C. 458.

There, "The respondent contends \* \* \* that the funds used to purchase the \* \* \* [partnership interest] were borrowed on the separate credit of petitioner and were his separate funds; and that petitioner's share of the profit \* \* \* was his separate income." In spite of the fact that "The courts of the State of Washington have uniformly held that money borrowed by a *husband* is presumed to be community property and that the property acquired with such borrowed money is presumed to be community property" (emphasis added) we there held that respondent's determination "that the borrowed money and

the property acquired were the separate property of petitioner * * * 'effectually overcomes the ordinary presumptions of law and the petitioners continue to have the duty of going forward with their proof. * * * ' "

That it was the wife who borrowed the money in this proceeding makes the present case even stronger. And if her inability to pledge the community credit without her husband's consent does not overcome the presumption of Washington law that property acquired during marriage is ordinarily community property, see *Stephens* v. *Nelson*, 37 Wash. 2d 31, 221 P. 2d 520, clearly respondent's determination must do so.

This brings us to the controverted factual issue as to whether petitioner's husband, now divorced, did in fact consent to or ratify the borrowing. Our findings dispose of that question.

They are based on an effort to reconcile the testimony of all witnesses on both sides, who, we assume, were each attempting to give his best recollection of his version of the occurrences. The conflict seems to arise primarily because of a failure to distinguish between petitioner's acquisition of an interest in the partnership on the one hand and her liability on the notes on the other. Of the first, we think the husband was made aware at some time near the actual event. As to the second, we accept his statement that he learned of the first note only by accident and of the subsequent one not at all; and that he was accordingly never asked, nor given occasion, to agree to or ratify any pledging of the credit of the community. That there was some failure even to keep him informed of the transactions is conclusively apparent from the reference in the property settlement of June 1945 to "a certain $10,000 note given to * * * Albin Johnson" which, at the time, no longer existed and had been extinguished exactly 2 years earlier; whereas it is stipulated that no reference was made to the note for $6,666.67 which was the only one then in effect.

We have accordingly found that petitioner's ex-husband did not know of either note at the time each existed and that the partnership interest was consequently petitioner's separate property. The income was not community income. "On the contrary * * * [the evidence] indicates that petitioner borrowed the * * * [money], that any notes given were * * * [her] personal notes * * * Under the circumstances, our conclusion is that the petitioner invested * * * [her] separate funds * * *; that it [the property] became * * * [her] separate property and that of * * * [her] partners; and that * * * [her] distributable share of the profit * * * is * * * [her] separate income and taxable as such." *E. C. Olson, supra*, 464, 465.

*Decision will be entered for the respondent.*