PAUL AND IRMA FINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fine v. Commissioner
Docket No. 3333-88
United States Tax Court
T.C. Memo 1989-640; 1989 Tax Ct. Memo LEXIS 640; 58 T.C.M. (CCH) 820; T.C.M. (RIA) 89640; December 4, 1989
*640 Leslie T. Jones, for the petitioners. Mary P. Kimmel, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioners' 1981 income tax of $ 8,587, and additions to tax of $ 429.35 under section 6653(a)(1)[1] and 50 percent of the interest due on $ 8,587, pursuant to section 6653(a)(2). The issues presented are: (i) whether petitioners are collaterally estopped from denying that sales of land were made in the ordinary course of business and that the gain from such sales is taxable to them as ordinary income; (ii) if collateral estoppel does not apply, whether certain properties were held primarily for sale to customers in the ordinary course of business, thus requiring profits from the sales to be reported as ordinary income; and (iii) whether petitioners were negligent or intentionally disregarded rules and regulations when they failed to report gain from the sale of the properties as ordinary income on their 1981 joint Federal income tax return. *641 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached are incorporated by this reference. Paul and Irma Fine, husband and wife (hereinafter referred to as petitioners), resided in Phoenix, Arizona, at the time their petition was filed. Petitioners were limited partners in a partnership known as Scottsdale Industrial Realty Investments (SIRI), which was formed in 1978. SIRI was a partner in Scottsdale Industrial Airpark Associates No. 3 (Associates No. 3), a general partnership, from 1978 through 1981. Associates No. 3 entered into a joint venture known as SIAA No. 3 with a Subchapter S corporation known as Triad Development Corporation (Triad) in 1978. [2]
*642 Tom Van Sickle was the managing partner of Associates No. 3 from 1978 through 1981. Van Sickle was also the president of Triad from 1978 through 1981, and ran the day-to-day operations of SIAA No. 3 during 1978 through 1981. SIAA No. 3 obtained 110 acres of land in 1977 for $ 544,500. SIAA No. 3 sold 40 acres of the original 110 acres to Ratliff, Miller and Muhr, Inc. for $ 600,000 on or about June 16, 1978. The remaining 70 acres were in the Scottsdale Industrial Airpark and were in two parcels known as Scottsdale Industrial Airpark Parcel Nos. 7 and 8 (Parcels Nos. 7 and 8). SIAA No. 3 initially wanted to develop Parcel Nos. 7 and 8. The development plans included rezoning and construction of off-site improvements and related facilities. During 1981, SIAA No. 3 sold Parcel Nos. 7 and 8 in two different transactions. Parcel No. 7 was sold to Tom Treaccar on or about April 14, 1981, for $ 4,161,063. On September 4, 1981, Van Sickle signed escrow instructions for the sale of Parcel No. 8 to Tom Treaccar for $ 4,431,141. The escrow instructions for Parcel No. 7, dated January 8, 1981, contained a paragraph where the seller agreed to help the buyer obtain governmental approval *643 for platting the property. The escrow instructions for Parcel No. 7 contained a paragraph where the buyer and seller acknowledged that it was the buyer's intention to plat and subdivide the property. The escrow instructions for parcel No. 8, dated September 4, 1981, were signed by representatives of Associates No. 3 and Triad, parties to the joint venture. These escrow instructions explained the buyer's intention to plat and subdivide the property and the seller's agreement to cooperate in any necessary activities to accomplish the buyer's intent. The purpose of SIAA No. 3, as stated in the joint venture agreement, was to: Do any and all things necessary to commence development and construction of the Project; to complete construction of the Project; to own and operate the Project; to borrow money and issue evidences of indebtedness, and to secure the same by mortgages, deeds of trust or security interests and the furtherance of any and all the objects of the business of the joint venture; and to enter into any leases, contracts or commitments, assume any obligations, execute any documents and do any and all other acts and things which may be necessary, incidental or convenient *644 to carry on the joint venture's business as contemplated in this joint venture agreement. Triad, as project manager of the SIAA No. 3 joint venture, agreed in part to "(a) Provide the personnel and all necessary operating and developing costs in order to maximize the development potential of the real property * * *; (b) Secure commitments to furnish interim and permanent financing for the Project; (c) Negotiate and execute the contract or contracts for the construction and development of the Project; (d) Secure all approvals, variances, use permits and reclassification required under any applicable zoning or land use laws, regulations or ordinances for the construction and development of the Project * * *." Parcel No. 7 was rezoned from residential to industrial (I-1) and commercial (C-4) by the Scottsdale City Council on October 23, 1979. As a condition of retaining the C-4 commercial zoning, SIAA No. 3 was required to plat 15 acres of the C-4 commercially zoned portion within 18 months. Triad hired O'Neil, Morea, Hall Engineering, Inc. to complete the development work required for zoning approval. On March 3, 1980, master plans for the streets, water sewer drainage, and street *645 scope for Parcel No. 7 were submitted to the City of Scottsdale, and on April 11, 1980, revised master plans for streets and drainage were submitted to the city. On May 5, 1980, an application for preliminary plat review of Parcel No. 7 was filed with the city. On May 22, 1980, the city staff approved a tentative plat for 21 industrial lots on Parcel No. 7. On November 17, 1980, the City of Scottsdale Community Development Department and Private Development Engineering recommended that city council approve the final plat of Parcel No. 7; however, on November 21, 1980, the plan for Parcel No. 7 was found to be in violation of the landscape requirements of the tentative plat and was thus not approved by the planning department. A preconstruction conference was held by SIAA No. 3 on December 15, 1980, at which time contracts were awarded for paving, construction, water, and sewers. SIAA No. 3 also participated in a construction meeting on January 21, 1981, at which certain additional improvements and paving for Parcel No. 7 were discussed. On behalf of SIAA No. 3, Van Sickle signed three letters of assurance of construction of subdivision improvements with United Bank of Arizona *646 for Parcel No. 7 on January 27, 1981. The letters included assurances of construction for road paving, water, underground utilities, landscaping, a traffic signal, and a sewer extension. Parcel No. 8 was surveyed on April 2 and 3, 1981. On May 19, 1981, Ron Werhan, project coordinator for Triad's activities on behalf of SIAA No. 3, paid preliminary plat fees to, and filed a development review application with, the City of Scottsdale. The Planning Manager recommended that the Planning Commission approve the rezoning of Parcel No. 8 on June 12, 1981. The hearing date concerning the application for subdivision of Parcel No. 8 was set for June 18, 1981. On June 3, 1981, the City of Scottsdale Development Review Board Staff Recommendation of Approval for the project Parcel No. 8 was filed. On June 12, 1981, the Maricopa County Health Department approved the preliminary plat for Parcel No. 8 after a preliminary field survey. On June 12, 1981, the City of Scottsdale Development Review Board issued ordinance requirements for Parcel No. 8. Tom Van Sickle and his wife litigated the question of whether income derived from the sale of Parcel Nos. 7 and 8 was ordinary income or capital *647 gain in Van Sickle v. Commissioner, T.C. Memo. 1988-115, affd. without opinion 875 F.2d 319 (9th Cir. 1989). The operative facts in that case are virtually identical to those presented in the instant case, except the identity of the taxpayers. In Van Sickle, we held that taxpayers had failed to carry their necessary burden of proof to establish that the property was held by SIAA No. 3 for investment rather than for sale in the ordinary course of business, as determined by respondent, and we accordingly decided this issue for respondent. Petitioners did not report any income from their interest in SIRI, Associates No. 3, or SIAA No. 3 on their 1981 joint Federal income tax return. Respondent determined that the sales of Parcel Nos. 7 and 8 by SIAA No. 3 resulted in additional ordinary income to petitioners, in the amount of $ 25,168, which was their partnership share of the sales proceeds. OPINION Once an issue is determined by a court of competent jurisdiction, the doctrine of collateral estoppel provides that such determination may be conclusive *648 in subsequent suits based upon a different cause of action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5 (1979). This Court has stated that the application of collateral estoppel depends on five conditions, Peck v. Commissioner, 90 T.C. 162, 166-167 (1988). First, the issue in the second suit must be identical in all respects with the one decided in the first suit. Commissioner v. Sunnen, 333 U.S. 591, 597 (1948). Second, there must be a final judgment rendered by a court of competent jurisdiction. Peck v. Commissioner, supra at 166. Third, collateral estoppel may be invoked against parties and their privies to the prior judgment. Peck v. Commissioner, supra at 166. Fourth, the parties must have actually litigated the issues and the resolution of these issues must have been essential to the prior decision. Commissioner v. Sunnen, supra at 598, 601. Fifth, the controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. Commissioner v. Sunnen, supra at 599-600. Pursuant to the above five factors, *649 we now determine whether collateral estoppel precludes petitioners from raising the issue of whether income derived from the sale of Parcel Nos. 7 and 8 should be treated as ordinary income or long-term capital gain. In Van Sickle, the issue was whether income derived from the sale of Parcel Nos. 7 and 8 was ordinary income or capital gain to the taxpayers in 1981. Van Sickle involved a determination of Tom and Suzanne Van Sickle's Federal income tax liability for tax year 1981. The issue in the instant case is whether gain on the sale of Parcel Nos. 7 and 8 resulted in ordinary or capital gain income to petitioners for tax year 1981. The issue in the instant suit is thus identical to that decided in the Van Sickle case. The second condition necessary to employ collateral estoppel is that a final judgment must have been rendered by a court of competent jurisdiction in the first suit. A decision in the Van Sickle case was rendered by this Court and was affirmed by the Court of Appeals for the Ninth Circuit. This element of collateral estoppel determination has been met. The third link in the collateral estoppel fence is that the doctrine may be invoked only *650 against parties and their privies to the prior judgment. Gammill v. Commissioner, 62 T.C. 607, 613 (1974). While petitioners in this case were not parties in the Van Sickle action, respondent argues that they should be bound by the final decision in Van Sickle because they were in privity with Tom Van Sickle. The doctrine of privity describes the legal relationship that extends the conclusiveness of a prior adjudication for a party to a subsequent adjudication for a nonparty. United States v. ITT Rayonier, Inc., 627 F.2d 996 (9th Cir. 1980). "Privity is a shorthand way of establishing that an individual is not a 'stranger' to an action and is affected by a decision in such action." Gammill v. Commissioner, 62 T.C. at 614. The issue whether a nonparty can be bound by an earlier decision was addressed in Montana v. United States, 440 U.S. 147 (1979), in which a contractor on a Federal project in Montana brought suit in state court contending that a gross receipts tax unconstitutionally discriminated against the *651 United States government and the companies with which it dealt. The litigation in state court was directed and financed by the United States. The United States subsequently brought an action in Federal District Court challenging the constitutionality of the tax. By stipulation, the case in Federal District Court was continued pending a resolution of the state court action. The Montana Supreme Court upheld the state court decision by finding that the distinction made between public and private contractors was consistent with the requirements of the Supremacy and Equal Protection Clauses. The contractor abandoned its request for review of that decision by the United States Supreme Court. The contractor then instituted a second state court action involving different tax payments that nevertheless were attributed to the same tax that was the subject of the first state action. The Montana Supreme Court invoked the doctrines of collateral estoppel and res judicata to affirm the dismissal of the complaint after concluding that the second claim was essentially no different from the first. The United States then tried its case, which had been stayed, in the Federal District Court, *652 which concluded that the United States was not bound by the first state court action and that the tax violated the Supremacy Clause. On appeal, the United States Supreme Court held that the United States was collaterally estopped from challenging the prior judgment of the Montana Supreme Court concerning the first state court action brought by the contractor. In its opinion, the Court noted that although the United States was not a party to the first state court action brought by the contractor, it had the same interest as the contractor in the earlier case. The Court also noted that the complaint filed in the state court action by the contractor was virtually identical to the amended complaint filed by the United States in Federal District Court, leading the Court to conclude that, although the United States was not a party to the state court action, it "plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel. Drummond v. United States, 324 U.S. 316, 318 (1945)." Montana v. United States, 440 U.S. at 155. The Court stated that collateral estoppel was designed to preclude parties *653 from contesting matters that they have had a full and fair opportunity to litigate and that collateral estoppel "protects their adversaries from the expense and vexation attending multiple law suits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." 440 U.S. at 153-154. The Court then stated that "These interests are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved." Montana v. United States, 440 U.S. at 154. Courts have recognized that nonparties may be bound if a party is so closely aligned with their interests as to be a "virtual representative." United States v. ITT, Rayonier, Inc.627 F.2d 996, at 1003 (9th Cir. 1980). In particular, the United States Court of Appeals for the Ninth Circuit has held that the doctrine of privity for collateral estoppel purposes includes partners in litigation affecting the partnership whenever *654 the partner in the prior litigation is the virtual representative of the partner-litigant in the subsequent litigation. United States v. Geophysical Corp., 732 F.2d 693 (9th Cir. 1984). In that case, the court stated: A person technically not a party to the prior action may be bound by the prior decision if his interests are so similar to a party's that that party was his "virtual representative" in the prior action. [United States v.] ITT Rayonier, 627 F.2d [996] at 1003 [(9th Cir. 1980)]. See also Aerojet-GeneralCorp. v. Askew, 511 F.2d 710, 719 (5th Cir.), cert. denied, 423 U.S. 908, 96 S. Ct. 210, 46 L.Ed.2d 137 (1975); 18 Wright & Miller, Federal Practice § 4457 (1981). A finding of virtual representation may be based on an express or implied legal relationship that makes a party to the prior action accountable to a non-party. ITT Rayonier, 627 F.2d at 1003. [United States v. Geophysical Corp, 732 F.2d at 697.] In United States v. Geophysical Corp., supra, the Court of Appeals for the Ninth Circuit held that *655 a partnership may provide the legal relationship upon which a finding of virtual representation for collateral estoppel can be based. A general partner of a limited partnership, Geophysical Corporation of Alaska, litigated its right to protect information gathered from its geological and geophysical exploration under 43 U.S.C. section 1340(a)(1) (1982). The general partner refused to turn the information over to the Secretary of the Interior, arguing that the pertinent regulations were invalid and unconstitutional. The District Court upheld the regulations and ordered the general partner to provide the information. When the general partner refused to release the information, the United States filed an order requiring release of the information in a second action. In this action, the United States joined the limited partnership (Beaufort Sea) and the limited partners as defendants. The limited partner attempted to relitigate the validity of the disclosure regulations. The limited partnership and its limited partners were barred by the doctrine of collateral estoppel as privies of the general partner in *656 the prior litigation from relitigating the validity of the regulations. The court concluded that the partnership provided a legal relationship upon which a finding of virtual representation could be based. United States v. Geophysical Corp., 732 F.2d at 697. The court noted that the sole purpose of the partnership involved the collection and marketing of certain data and that the limited partners' only claim to partnership profits derived from sales of such data. The general partner which brought the first action in order to protect the ownership and market value of the data acted not only to protect its own interests, but also to protect the interests of the limited partners. The court held that the interests of the general partner, the limited partnership, and the limited partners were so closely related that the limited partnership and the limited partners were bound by the prior decision in the District Court. United States v. Geophysical Corp., 732 F.2d at 698. Respondent argues that Tom Van Sickle was the virtual representative of petitioners in the instant case. He states that Van Sickle not only decided the Federal income tax liability *657 of Tom and Suzanne Van Sickle, but more importantly served as the vehicle to determine the intentions of SIAA No. 3 with regard to its plans for Parcel Nos. 7 and 8. In order to determine the impact of SIAA No. 3's sales on Tom and Suzanne Van Sickle's Federal income tax for 1981, respondent argues that this Court first had to determine the intent of SIAA No. 3 with respect to its purchase, holding, and sales of Parcel Nos. 7 and 8. That is what this Court did in Van Sickle v. Commissioner, supra.
Respondent argues that the present litigation was a carbon copy of the Van Sickle case, that Tom Van Sickle was the central actor and witness concerning the actions of the joint venture and partnership in both cases, and that he constitutes petitioners' virtual representative in the joint venture and partnership matters. We agree with respondent. It is the intent of the partnership, not of any specific partner, which is determinative in characterizing income for purposes of taxation. Podell v. Commissioner, 55 T.C. 429, 433 (1970). SIAA No. 3's *658 intentions concerning Parcel Nos. 7 and 8 were established in Van Sickle. We have previously considered the issue of whether partners may be in privity for purposes of collateral estoppel or res judicata. In Mathisen v. Commissioner, 22 T.C. 995 (1954), the issue was whether the taxpayer's distributive share of partnership income constituted separate income or community property income. The taxpayer claimed to be in privity with a taxpayer in the earlier-litigated Western Construction Co. v. Commissioner, 14 T.C. 453 (1950), affd. 191 F.2d 401 (9th Cir. 1951). The Court in Mathisen acknowledged that with respect to collateral estoppel, "In the tax field this would ordinarily require privity by title or estate, or, as in the case of a transferee, by identity of taxable status" (emphasis supplied), Mathisen v. Commissioner, 22 T.C. at 999. The Court then went on to hold that "collateral estoppel cannot be involved because the claim being different, no facts pertinent here were actually litigated and decided." Mathisen v. Commissioner, 22 T.C. at 1000. In the instant case, the taxable *659 status of petitioner and Tom Van Sickle were certainly the same: they were both linked as partners (petitioners through SIRI) with the Associates No. 3 partnership, which was a member of the SIAA No. 3 joint venture. The taxable nature of their incomes from the sale of property by the joint venture was determined by the nature of the sale in the hands of the joint venture. Thus, the tax status of petitioner and Van Sickle was the same, and the issue decided in Van Sickle was the same issue as that presented in the instant case. We agree with the applicability of collateral estoppel in the case of these partners, as enunciated by the Ninth Circuit in United States v. Geophysical Corp., 732 F.2d 693 (9th Cir. 1984), and we do not think that Mathisen v. Commissioner, supra, requires a different result. Accordingly, we conclude that Van Sickle is a virtual representative of, and is in privity with, petitioners. As to the fourth element necessary to employ collateral estoppel, it is apparent from the Van Sickle opinion that the determination of whether the sales of Parcel Nos. 7 and 8 resulted in ordinary income, as opposed to capital *660 gain income, was essential to the outcome of that case. That very issue is at the heart of the instant case. Finally, petitioners can be collaterally estopped on the issue of ordinary or capital gain income so long as the controlling facts and applicable legal rules are unchanged from those in prior litigation. The facts in the instant case are identical to those present in Van Sickle and the legal issues involved remain unchanged. Petitioners argue that collateral estoppel does not apply to a second litigation if the first litigation was resolved on a basis of the burden of proof. Petitioners contend that Van Sickle was determined solely on the issue of burden of proof and not on the merits, and that they cannot be estopped by Van Sickle. This and other courts have consistently held that the application of collateral estoppel to an action is not prohibited merely because a prior litigation was decided based on the failure of a party to carry his burden of proof. Fairmont Aluminum Co. v. Commissioner, 22 T.C. 1377 (1954), affd. 222 F.2d 422 (4th Cir. 1955), *661 cert. denied 350 U.S. 838 (1955); Dean v. Commissioner, 56 T.C. 895 (1971). In Fairmont Aluminum Co. v. Commissioner, supra, the taxpayer argued that failure to carry the burden of proof in an earlier case before this Court did not result in a decision "on the merits," and that collateral estoppel did not apply to a determination that was not made on the merits. We disagreed with the taxpayer on the following grounds: In submitting its case * * * petitioner in effect requested the Court to adjudicate the issues raised by the pleadings in that case and to determine its tax liability for the years involved accordingly. The determination * * * was made on the facts presented. There is a burden of proof on some party in every case, and even though the adjudication may be rested upon a failure to discharge that burden it is nonetheless an adjudication on the merits. * * * The question before us in this connection is whether the issues now in controversy on the merits have been previously litigated. It is clear that they have been litigated, and, therefore, the prior decision must be viewed as a decision on the merits. [Fairmont Aluminum Co. v. Commissioner, 22 T.C. at 1381-1382.] *662 In Van Sickle, we concluded that the taxpayer failed to carry the burden of proof. Petitioners' claim that the Van Sickle decision was not "on the merits" is without merit. The final issue for decision is whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations. Negligence is defined as a failure to exercise the due care that a reasonable and ordinarily prudent person would under the circumstances. Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967); Neely v. Commissioner, 85 T.C. 934, 947 (1985). As the facts show, detailed at some length herein, there were facts in favor of petitioners, there were facts opposed to petitioners, and there were facts which were ambiguous. Petitioners filed their return, of course, long before the decision of this Court in Van Sickle, and were not chargeable with that knowledge as of the time we must test them. Under the circumstances of this case, it might have been reasonable for them to report their share *663 of partnership income as capital gain, as they contend, rather than as ordinary income, as respondent determined. It was not reasonable, however, for petitioners not to report income from the transaction at all in their return. Petitioners make no suggestion, and there is no indication, that the sale of the property by SIAA No. 3 was a nontaxable transaction. The burden of proof was on petitioners to establish that they were not negligent, as determined by respondent, Enoch v. Commissioner, 57 T.C. 781, 803 (1972); Rule 142(a). They have failed to carry that burden. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code, as in effect for the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. The following graph represents the organizational structure of the SIAA No. 3 Joint Venture in 1981: ↩
Triad, Inc.
S.I.A.A. #3
Associates #3
Shareholders
JOINT VENTURE
A General Partnership VAN SICKLE, President
Triad, Inc.
VAN SICKLE, Managing Partner
GAREY
Project Manager
GAREY
CUSHING
CUSHING
STEPHENSEN
STEPHENESEN
RHOADS
RHOADS
KING
KING
RICHARDSON
RICHARDSON
WERTZBERGER
WERTZBERGER
TRIAD INC.
SCOTTSDALE INDUSTRIAL
REALTY INVESTMENTS A Limited Partnership  Fifer, Gen. Part.     Limited Partner  Paul Fine, Petitioner   Others Unknown