DONALD FELDMAN and PATRICIA FELDMAN, a/k/a PATSY JANE FELDMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Feldman v. Commissioner
Docket No. 20906-87
United States Tax Court
T.C. Memo 1990-532; 1990 Tax Ct. Memo LEXIS 586; 60 T.C.M. (CCH) 987; T.C.M. (RIA) 90532; October 15, 1990, Filed Harry J. Kaplan, for the petitioners. W. Robert Abramitis and Claudine D. Ryce, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION This case is before the Court on respondent's motion for partial summary judgment filed pursuant to Rule 121. [1] Respondent argues that there are no genuine issues of material fact with respect to the disallowance of petitioners' distributive shares of losses and tax credits from the Berkeley Group, Ltd. , partnership (Berkeley). Petitioners objected to respondent's *588 motion, raising two additional issues which we will treat as a cross-motion for partial summary judgment. The issues raised by petitioners are (1) whether the period of limitations expired before respondent mailed a notice of deficiency to petitioners, and (2) whether additional interest under section 6621(c) [2] can be applied to petitioners. FINDINGS OF FACT Petitioners were limited partners in Berkeley, a movie distribution investment program. They filed joint Federal income tax returns for tax years 1974 through 1980. On April 2, 1987, respondent issued a notice of deficiency to petitioners for tax years 1974 through 1980. Petitioner deducted and respondent disallowed the following losses from Berkeley: Year
Loss
1975
$ 135,331
1976
50,195
1977
10,528
1978
6,417
1979
3,671
1980
2,896
The notice of deficiency also disallowed an investment tax credit of $ 17,057 *589 in 1975 relating to the partnership's purchase of film distribution rights to a movie. Petitioners claimed their distributive share of this credit. For all the years in question except 1979 respondent also determined that petitioners were liable for additional interest under section 6621(c). Petitioners executed Forms 872-A for the years 1974 through 1980. The forms provide that the Federal income tax due for the year may be assessed on or before the 90th day after: (a) the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872-T to the taxpayer(s); or (c) the Internal Revenue Service mails a notice of deficiency for such periods. * * * Neither party used Form 872-T to terminate the consent to extend the time to assess the tax for the years in question. Petitioners resided in Miami, Fla., when they filed their petition in this case. OPINION Summary judgment under Rule 121 is derived from Rule 56 of the Federal Rules of Civil Procedure. It is intended to expedite litigation and avoid unnecessary and *590 expensive trials of phantom factual questions. Cox v. American Fidelity & Casualty Co., 249 F.2d 616, 618 (9th Cir. 1957); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). Summary judgment is not a substitute for trial, in that disputes over factual issues are not to be resolved in such proceedings. Naftel v. Commissioner, 85 T.C. 527 (1985); Espinoza v. Commissioner, 78 T.C. 412, 415-416 (1982). A motion for summary judgment is granted only when it is shown that "there is no genuine issue [of] material fact and that a decision may be rendered as a matter of law." Rule 121(b). Since the effect of granting a motion for summary judgment is to decide an issue against a party without allowing him an opportunity for trial, such action is a "drastic remedy" to be used cautiously and sparingly after a careful consideration of the case reveals that the requirements for summary judgment have clearly been met. Espinoza v. Commissioner, supra; Hollander v. Commissioner, T.C. Memo. 1987-87. The party moving for summary judgment has the burden of showing the absence of a genuine *591 issue of material fact. Weinberger v. Hynson, Westcott and Dunning, Inc., 412 U.S. 609, 621-622 (1973); Adickes v. Kress & Co., 398 U.S. 144, 158-159 (1970). The party opposing the motion is to be afforded the benefit of all reasonable doubt, and the underlying facts contained in the record must be viewed in a light most favorable to the opposing party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Hollander v. Commissioner, supra.
Berkeley Losses
Respondent seeks to bind petitioners to the Court's decision in Abramson v. Commissioner, T.C. Memo. 1987-276. Like petitioners, the taxpayer in Abramson was a limited partner in Berkeley. The partnership owned the theatrical and television distribution rights to the film, "Swept Away." We found that the 1975 fair market value of the distribution rights at issue was no more than $ 150,000 and that the taxpayer had failed to prove his investment should be respected for Federal income tax purposes as one of economic substance. Petitioner Donald Feldman was called by respondent and testified as a witness in the Abramson *592 trial. He was not represented by counsel when he appeared and testified. Respondent does not specify a legal theory for his position that petitioners should be bound by Abramson, but simply alleges that "it is respondent's belief that there are no genuine issues as to any material facts left for trial with respect to the correctness of the Commissioner's disallowances of the petitioners' distributive share of losses and credits from Berkeley * * *." Petitioners assert that summary judgment is not appropriate because genuine issues of material fact do exist. Specifically, petitioners contend they should be allowed to offer evidence of the fair market value of the film rights and potential television revenue which was not considered in the prior case. They also allege that Donald Feldman's state of mind and personal efforts to make the investment financially successful were different from those of Mr. Abramson and that petitioners should be allowed to prove this. [3]
*593 Moreover, petitioners contend, the doctrine of collateral estoppel does not apply to bind them to our prior findings. Petitioners argue that they were not parties in the prior action, nor were they in privity with the Abramsons. We agree with petitioners that collateral estoppel does not apply, and therefore material issues of fact do exist. Collateral estoppel serves the dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation. Under the doctrine of collateral estoppel, or issue preclusion, a judgment in the prior suit precludes, in the second cause of action, litigation of issues actually litigated and necessary to the outcome of the first action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Thus collateral estoppel is used to foreclose an adversary from relitigating an issue he previously litigated unsuccessfully in a different action. Until recently, however, the scope of collateral estoppel was limited by the doctrine of mutuality of parties -- neither party could use the judgment as an estoppel against the other unless both *594 parties were bound by the judgment. Parklane Hosiery Co. v. Shore, supra, at 326-327. In Parklane the Supreme Court abandoned the requirement of mutuality and sanctioned the use of collateral estoppel both offensively and defensively. Offensive use occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant. Parklane Hosiery Co. v. Shore, supra at 326 n.4. Here respondent (in the technical position of "defendant") seeks to estop petitioner from alleging respondent erred in determining a deficiency against petitioner. We need not decide, however, whether this is "offensive" or "defensive" estoppel. In both the offensive and defensive use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action. Parklane Hosiery Co. v. Shore, supra at 329. Respondent seeks to estop petitioner, who has never litigated *595 the issue. It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard. Parklane Hosiery Co. v. Shore, supra, at 327 n. 7. A person in privity is one who prosecutes or defends a suit in the name of another to establish or protect his own rights. Souffront v. Compagnie des Sucreries, 217 U.S. 475, 486-487 (1910). There is no evidence that petitioners herein were in privity with Mr. Abramson. Although petitioner testified at the Abramson trial, he was called by respondent, not by Mr. Abramson, and was not represented by counsel. A partner, solely by reason of the partnership relationship, is not privy with the other partners since one partner's interest is not derived from another partner but is an independent interest. See Mathisen v. Commissioner, 22 T. C. 995, 998 (1954). [4] Moreover, the Court of Appeals to which this case is appealable has stated: We begin by observing that even though the instant appeal involves the same partnership and the same transaction as that involved in the appeal to the Ninth Circuit, appellants *596 are not collaterally estopped from litigating the same issue litigated in the Ninth Circuit. * * * Wendland v. Commissioner, 739 F.2d 580, 581 (11th Cir. 1984). See also Divine v. Commissioner, 500 F.2d 1041 (2d Cir. 1974) (Decision of the Court of Appeals for the 7th Circuit involving another stockholder of the same corporation and the same legal issue did not collaterally estop the Commissioner from relitigating that issue). Accordingly, we deny respondent's motion for partial summary judgment. Although we agree with petitioners that collateral estoppel does not apply and they are not, therefore, bound by Abramson, we at the same time draw their attention to section 6673. [5] We urge the parties to make full use of the stipulation process and to limit the trial of this case to the material facts which are fairly in dispute. *597 Statute of Limitations
Petitioners contend that respondent's notice of deficiency is barred by the statute of limitations. In general, taxes imposed by the Internal Revenue Code must be assessed within three years from the time the return is filed. Sec. 6501(a). It is undisputed that the notice of deficiency in this case was not sent to petitioners within the three-year period. Therefore, unless an exception to the general three-year limitation period exists, respondent's determination is time-barred. The period for assessment may be extended by agreement, provided such agreement is executed before the period for assessment has expired. Sec. 6501(c)(4). In this case, the parties executed completed Forms 872-A for the years in question within the applicable limitation period. Neither party used a Form 872-T to terminate the executed 872-A Forms. Petitioners do not dispute that they executed a Form 872-A for the years in question. Instead petitioners argue that the period for assessment terminated because respondent failed to issue the notice of deficiency within a "reasonable" time, relying upon McManus v. Commissioner, 65 T.C. 197 (1975), affd. *598 583 F.2d 443 (9th Cir. 1978). In Estate of Camara v. Commissioner, 91 T.C. 957 (1988) (Court reviewed), we stated we would no longer follow McManus. We held that the current version of Form 872-A may be terminated only through issuance of a Form 872-T, or a notice of deficiency. Estate of Camara v. Commissioner, supra; Grunwald v. Commissioner, 86 T.C. 85, 89-90 (1986). This result was reached because Form 872-A explicitly allows only for specified methods of termination, and because the revised Form 872-A was meant to reduce the uncertainty that surrounded the question of whether various written communications constituted termination letters. Grunwald v. Commissioner, 86 T.C. at 89-90. Recent decisions of the Tenth Circuit have also rejected the view pressed by petitioners. See Stenclik v. Commissioner, 907 F.2d 25 (2d Cir. 1990); Wall v. Commissioner, 875 F.2d 812 (10th Cir. 1989). In this case neither party used Form 872-T to terminate the executed Form 872-A for any of the years in issue. Accordingly, we deny petitioner's cross-motion for summary *599 judgment on this issue and hold that respondent's notice of deficiency is not barred by the statute of limitations. Additional Interest under Section 6621(c)
Finally, petitioners question whether application of section 6621(c) to this case is constitutional where the notice of deficiency would have been barred by the statute of limitations at the time of section 6621(c)'s enactment, absent a waiver consent. Section 6621(c) provides for an increase in the rate of interest payable under section 6601 with respect to "any substantial underpayment" (an underpayment exceeding $ 1,000) "which is attributable to 1 or more tax motivated transactions." Sec. 6621(c)(1) and (2). In his notice of deficiency respondent applied section 6621(c) on the ground that petitioners are liable for a substantial underpayment for tax years 1974 through 1978 and 1980, attributable to tax-motivated transactions. Section 6621(c) was enacted on July 18, 1984, and is effective as to interest accruing after December 31, 1984. In Solowiejczyk v. Commissioner, 85 T.C. 552, 556 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986), we held that applying section *600 6621(c) to a deficiency attributed to a 1978 tax year was constitutional. Petitioners contend that Solowiejczyk should not apply in this case because the limitation period for assessing taxes would have expired prior to December 31, 1984, absent the execution of Form 872-A. The event which subjected the taxpayer to the imposition of additional interest was not the filing of the 1978 return, but the existence of an underpayment beyond the effective date of section 6621(c). Likewise, we do not agree with petitioners' contention that section 6621(c) is being retroactively applied. As in Solowiejczyk, petitioners' filing of their returns is not the event which subjects them to imposition of section 6621(c). The event is the existence of a substantial underpayment attributable to a tax motivated transaction after December 31, 1984, the effective date of section 6621(c). In connection with the enactment of section 6621(c) the Conference Committee stated that "The provision is effective with respect to interest accruing after December 31, 1984, regardless of the date the return was filed." H. Rept. 98-861 (Conf.), 1984-3 C.B. (Vol. 2) 1, 239 (emphasis added) *601 . We believe Congress intended that we make broad use of our authority to impose additional interest on substantial underpayments of tax attributable to tax motivated transactions. Solowiejczyk v. Commissioner, supra, at 556. See also Law v. Commissioner, 84 T.C. 985 (1985); Johnson v. Commissioner, 85 T.C. 469 (1985). By executing the Form 872-A waiver, petitioners consented to extending the statute of limitations period. Petitioners did not have to consent to executing the form. They also could have restricted the terms of the extension, or terminated it at any time with a Form 872-T. Since petitioners did none of these things, the period for issuing a notice of deficiency never expired. Given this, we see no distinction between applying 6621(c) in this case and in Solowiejczyk. Accordingly, we deny petitioners' cross-motion for partial summary judgment with respect to the applicability of section 6621(c). If we determine that a substantial underpayment attributable to tax-motivated transactions exists, section 6621(c) will apply to such underpayment with respect to interest accruing after December 31, 1984, the *602 effective date of section 6621(c). To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 6621(d) was renumbered as sec. 6621(c) by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2744.↩
3. In regard to the weight to be given to petitioner's state of mind, we direct the parties' attention to Kirchman v. Commissioner, 862 F.2d 1486, 1492 (11th Cir. 1989) ("It is clear that transactions whose sole function is to produce tax deductions are substantive shams, regardless of the motive of the taxpayer."). See also Shriver v. Commissioner, 899 F.2d 724 (8th Cir. 1990); Rose v. Commissioner, 868 F.2d 851 (6th Cir. 1989); Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988); and Cherin v. Commissioner, 89 T.C. 986↩ (1987).
4. See also Wray v. Commissioner, T.C. Memo. 1978-488↩.
5. SEC.6673. SANCTIONS AND COSTS AWARDED BY COURTS. (a) TAX COURT PROCEEDINGS. --
(1) PROCEDURES INSTITUTED PRIMARILY FOR DELAY, ETC. -- Whenever it appears to the Tax Court that --
(A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay, (B) the taxpayer's position in such proceeding is frivolous or groundless, or (C) the taxpayer unreasonably failed to pursue available administrative remedies, the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000. (2) COUNSEL'S LIABILITY FOR EXCESSIVE COSTS. -- Whenever it appears to the Tax Court that any attorney or other person admitted to practice before the Tax Court has multiplied the proceedings in any case unreasonably and vexatiously, the Tax Court may require --
(A) that such attorney or other person pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct, or (B) if such attorney is appearing on behalf of the Commissioner of Internal Revenue, that the United States pay such excess costs, expenses, and attorneys' fees in the same manner as such an award by a district court.↩