[No. 7957. Department One. July 12, 1909.]

## George W. Rhoades, *Appellant*, v. C. O. Barnes, *Respondent*.[1]

Licenses—Parol—Revocation—Frauds, Statute of. A parol license to be exercised on the land of another creates an interest in land, is within the statute of frauds, and may be revoked by the licensor irrespective of performance and expenditures by the licensee.

Waters and Water Courses—Prescription—Adverse User. No prescriptive right is acquired under a permission to use water by tapping a water company's line on the lands of a third person, the user paying therefor by keeping a dam in repair; since the user of the water was not a proprietor, and the use was permissive and not hostile.

Same—Lapse of Time—Interruption of User. The initiation in 1898 of a prescriptive right to take water from a pipe on the lands of another, is prevented from ripening by the acts of the owner in 1905, claiming the water and stopping the flow.

Same—Grants—Restrictions. A grant by a water company to erect a dam and take water through a four and one-half inch pipe at any point in a creek across the grantor's lands, does not authorize the use of an eight-inch pipe, nor a change in the location of the dam after several year's use, the grantee being bound by its first location.

Estoppel—Matter in Pais. The use of water under a parol license, which was revoked before any prescriptive rights could ripen, does not obtain rights in the realty by estoppel *in pais*.

Appeal from a judgment of the superior court for Klickitat county, McCredie, J., entered April 14, 1908, upon findings in favor of the defendant, in an action for an injunction, after a trial before the court without a jury. Affirmed.

*E. C. Ward, N. L. Ward,* and *W. B. Presby,* for appellant.

*Brooks & Smith* and *Wm. T. Darch,* for respondent.

Morris, J.—The parties hereto are the owners of adjoining lands in Klickitat county, near Goldendale. Across the

[1]Reported in 102 Pac. 884.

respondent's land flows a small creek, known as Klickitat creek. In 1883 the Goldendale Water Ditch Company commenced taking water from the creek and furnishing it to the town for domestic uses. This taking was at a point south of respondent's lands. In 1887, the supply being insufficient, a writing was obtained, signed by seven-twelfths of the then ownership of the respondent's land, which purported to grant to the company the exclusive right of way across the land to lay a four and one-half inch pipe, and to take water from the creek at any point to be selected by the company. Under this writing the company built a small dam and laid a pipe line across the lands, conveying the water to Goldendale, where it was sold for domestic use. In 1890, more head being required, the location of the dam was changed to a point higher up the creek, and an eight-inch pipe laid across the lands. In 1895 appellant obtained from the then owners of the pipe line permission to take water from this eight-inch pipe, tapping it at a point where it crossed a corner of his lands.

The company continued to use this pipe line to supply the inhabitants of Goldendale until about the year 1896, when a new supply was obtained from another source. At about the same time the old pipe line was abandoned, no use being made of it by the people of Goldendale, with the exception of a Mr. Young, one of the original owners, who seems to have made some use of it for irrigating his orchard. The permission given appellant to tap this line was in consideration of his keeping the dam in repair; the dam being only a temporary affair consisting of a fourteen inch log thrown across the creek with dirt and straw placed against it. Appellant continued using the water from this tap about three years, when he obtained a second permission to tap the pipe about three hundred feet from the first tap, with a two-inch pipe. One Hornibrook was then the owner of respondent's lands, and he gave appellant permission to cross the lands with this two-inch pipe, about the distance of three hun-

·dred feet from the point where the new tap was made, until appellant reached his own lands. Hornibrook also used water from this dam for irrigating purposes, under the same condition of its use by appellant, viz., keeping the dam and pipe line in repair; and under this condition the dam was kept up.

In 1901 respondent became the owner of the land previously occupied by Hornibrook, and from the time of his ownership he seems to have assisted in maintaining the dam, which was removed each winter during the time of high water in the creek and replaced again in the spring, appellant obtaining permission from respondent to replace the dam in 1901, and the lower court finding that, whatever was done upon the dam subsequent to that year, was by permission and consent of respondent. Under this arrangement the dam was maintained each season, until in July, 1905, when the respondent, claiming there was not sufficient water for the use of himself and appellant, stopped the flow through appellant's pipe; and after a third stoppage of the water, appellant brought this action to obtain injunctive relief; which being denied by the court below, he appeals.

Appellant contends that, the company having given him the rights to take water from its pipe upon condition of his keeping the dam in repair, such right became a license, and being coupled with a performed condition, it became and is irrevocable; and cites many cases holding that a parol license made upon condition, when the condition is performed by the licensee, or expenses incurred by him, becomes irrevocable. · It must be admitted that many cases so hold; but this court, in the case of *Hathaway v. Yakima Water L. & R. Co.*, 14 Wash. 469, 44 Pac. 896, 53 Am. St. 847, in reviewing such a rule, refused to adopt it, holding then, as we do now, that a parol license to be exercised upon the land of another creates an interest in land, is within the statute of frauds, and may be revoked by the licensor at any time, irre-

spective of the performance of acts under the license, or the expenditure of money in reliance thereon. This case and the authorities there cited dispose of this contention.

It is next contended that, the water company having transferred its right to the water and the dam to appellant, these respective possessions may be attacked for the purpose of forming a prescriptive right. Appellant's evidence shows his use of the water to have been under his permission from the water company, paying for such use by the repairs to the dam. This use was not that of a proprietor, nor was he claiming adversely to any one. To gain a prescriptive right, the enjoyment of the right must be that of a proprietor. It must also be adverse and not permissive. Farnham, Waters, § 809. No prescriptive right can initiate in a recognition of title in another. The water company recognized the title of respondent's grantors, and claimed its right to maintain the dam, either under the original grant to erect the dam, or under a permissive right to change and construct it at the last location. There is no evidence of any hostile holding on the part of the water company, and, without such hostile holding, both in the inception and continuance of the claimed right, there would be no prescription. Neither does appellant claim to be hostile to any one, his entire claim being based upon the right given him by the water company, for which he met the consideration required. Further, appellant could not have claimed under any original right to use the water given him by the first owners of the company, for the reason that subsequent to Hess' control of the company, he obtained permission from him. Neither was there a sufficient lapse of time in which to ripen a prescriptive right. From 1895 to 1898 he used the water under his permission from the water company. In 1898 he obtained Hornibrook's permission to lay pipes across these lands and take from the dam three hundred feet away from the first diversion. So that, if it could be held that this last diversion initiated a

prescriptive right, the acts of the respondent disturbed it long before it had ripened.

Assuming, but not so holding, that the written instrument, signed by seven-twelfths of the French heirs, was a grant to the water company to lay a four and one-half inch pipe from any point on Klickitat creek across the French lands, the company continued to take water at the initial point under this grant only for about three years, when they moved the point of diversion half a mile up stream and built a new dam, from which they laid an eight-inch pipe, abandoning the first dam. The second location could not be justified under the grant. The right to erect a dam and lay a four and one-half-inch pipe therefrom did not convey a right to change such dam at will, nor to lay an eight-inch pipe across any portion of the lands the company might desire. Having made its first location under its grant, the water company was bound thereby, and had no right to go where it would and lay any pipe it saw fit across any desired part of the land. *McCue v. Bellingham Bay Water Co.*, 5 Wash. 156, 31 Pac. 461:

"Where an easement in land is granted in general terms, without giving definite location and description to it, so that the part of the land over which the right is to be exercised cannot be definitely ascertained, the grantee does not thereby acquire a right to use the servient estate without limitation as to the place or mode in which the easement is to be enjoyed, when the right granted has been once exercised in a fixed and defined course, with the full acquiescence and consent of both parties, it cannot be changed at the pleasure of the grantee." *Jennison v. Walker*, 11 Gray 423.

To the same effect is *Onthank v. Lake Shore etc. R. Co.*, 71 N. Y. 94, 27 Am. Rep. 35, where, in a grant to lay water pipe across grantor's lands without specifying the place or size of the pipe, it was held that, "after the grantee had once laid its pipe and thus selected the place where it would exercise its easement thus granted in general terms, what was before

indefinite and general became fixed and certain," and this both as to the location and size of the pipe.

Appellant invokes the doctrine of estoppel. While it is true that rights in real estate may be obtained and irrevocably fixed and determined by matter *in pais*, there are no facts in this case which can be relied upon for the establishment of such a rule. Other questions are suggested by appellant, but they have all been disposed of by what has been said.

Finding no error, the judgment is affirmed.

RUDKIN, C. J., CHADWICK, FULLERTON, and GOSE, JJ., concur.