[No. 27083.   Department Two.   December 9, 1938.]

V. P. ADAMS *et al., Respondents,* v. OLIVE B. MIGNON
*et al., Defendants,* LOUIS C. MIGNON *et al.,*
*Appellants.*[1]

[1]Reported in 84 P. (2d) 1016.

*Padden & Moriarty* and *Melvin T. Swanson,* for appellants.

*Marion Garland,* for respondents.

BEALS, J.—For some time prior to June, 1937, Louis C. Mignon, Florence M. Nordby, Laura Philipsen, and Sarah Greenwood, brother and sisters, owned, in equal undivided shares, a tract of land in Kitsap county, Washington. June 16, 1932, these four persons had executed a general power of attorney to John Philipsen, then the husband of Laura Philipsen. While the power of attorney was general in its nature and did not describe any land or other property, it contained the following paragraph:

"This power of attorney to be in force until all money expended by John Philipsen in connection with the properties is paid back, and he is released from all liabilities."

June 24, 1937, John Philipsen, as attorney-in-fact for the four persons above named, acting on their behalf, conveyed to Olive B. Mignon, the mother of his principals, the tract of land above referred to, the deed being filed for record, with the power of attorney above mentioned, in the office of the auditor of Kitsap county, June 28, 1937. By warranty deed, also dated June 24, 1937, recorded July 6th following, Olive B. Mignon, a single woman, conveyed the property to plaintiffs, V. P. and Lucy W. Adams, husband and wife.

July 12, 1937, Mr. and Mrs. Adams, as plaintiffs, instituted this action against Olive B. Mignon, the latter's four children above named, and their respective spouses, alleging the ownership of the property in Olive B. Mignon, the conveyance from her to plaintiffs, and that the four defendants, the. children of Olive B. Mignon, claimed some interest in the property adverse

to plaintiffs. Plaintiffs asked that their title be quieted as against the defendants.

Louis C. Mignon and Sigrid Mignon, his wife, answered the complaint, denying the allegations thereof and affirmatively alleging that the deed to defendant Olive B. Mignon was, to plaintiffs' knowledge, void for want of consideration, and was part of a fraudulent plan and conspiracy, to which plaintiffs were parties, to obtain title to the answering defendants' interest in the property; that the deed was invalid; that John Philipsen, who signed the same as attorney-in-fact for the grantors, had no authority to execute such an instrument; and that the answering defendants were the owners of an undivided one-fourth interest in the property; they praying that title to such interest be quieted in them.

Plaintiffs replied with denials to the affirmative matter contained in defendants' answer, and the cause proceeded regularly to trial. The other interested defendants quitclaimed to plaintiffs, and the court, having entered findings of fact and conclusions of law in plaintiffs' favor, signed a decree quieting plaintiffs' title against the answering defendants. From this decree, Louis C. and Sigrid Mignon have appealed.

Many errors are assigned, appellants contending that the trial court erred in receiving certain testimony over their objection; in denying their motions to strike several portions of the testimony; in admitting an exhibit in evidence over appellants' objection; in rejecting certain evidence offered by appellants and in refusing their offers of proof; in denying appellants' challenge to the sufficiency of the evidence at the close of respondents' case; in refusing to grant appellants' motion for judgment in their favor at the close of the trial; in denying appellants' motion for a new trial; in refus-

ing to enter a decree in appellants' favor; and in entering a decree in respondents' favor.

It appears that defendant Laura Philipsen (who had been divorced from John Philipsen) resided in San Diego, California, and during the late spring of 1937, was there interviewed by respondent V. P. Adams (who will hereafter be referred to as though he were the sole respondent), who wished to purchase the property which is the subject matter of this action. Mrs. Philipsen finally accepted a deposit of one hundred dollars on a sale price of four thousand dollars, and delivered an earnest money receipt. Appellant then refused to join in a sale to respondent, which fact respondent knew. Sometime later, respondent communicated with appellant Louis C. Mignon (who will hereafter be referred to as though he were the sole party appellant) in connection with the sale of the property, appellant informing respondent that the deal was "out," respondent assuming that appellant did not wish to sell his interest in the land, at least for the amount offered.

Sometime thereafter, Laura Philipsen visited Bremerton, and the negotiations were continued, with the result that Mrs. Philipsen filed for record the power of attorney and the deed to Mrs. Mignon, and respondent deposited in a Bremerton bank four thousand dollars, and agreed to pay some taxes due against the property, Mrs. Philipsen delivering to the bank, in escrow, the deed above referred to from her mother, defendant Olive B. Mignon, to respondent. It was agreed that a complete abstract of title to the property should be furnished, showing a merchantable title in Olive B. Mignon, the deed to be then delivered to respondent.

After the money and the deed from Olive B. Mignon had been deposited in the bank, Mrs. Philipsen and respondent called on appellant at his office in Seattle.

Apparently, appellant and his sister indulged in some rather heated argument over family disagreements, and appellant made it clear that he did not wish to sell his interest in the property. Appellant then returned to respondent the latter's check, which respondent had previously given Mrs. Philipsen in San Diego, which check Mrs. Philipsen had forwarded to appellant, and respondent returned to appellant the earnest money receipt which Mrs. Philipsen had delivered to him. This earnest money receipt called for a purchase price of four thousand dollars. Respondent had subsequently increased his offer for the property by agreeing to pay, in addition, five years back taxes, amounting to over three hundred dollars, and fifty dollars on account of the preparation of the abstract.

Upon his return to Bremerton, respondent consulted an attorney, who advised that an action to quiet title should be instituted. When the abstract of title was delivered to respondent, he delivered the same for examination to another attorney, and upon being advised that the abstract disclosed good title in Olive B. Mignon, the deed from that lady to respondent was taken from the bank and recorded.

Appellant, having discovered the steps which had been taken, filed a revocation of the power of attorney from himself to John Philipsen, the revocation having been filed for record July 30, 1937. The evidence indicates that, notwithstanding the deed to Olive B. Mignon, appellant and his sisters retained an interest in the property, and that the money paid by respondent was to be divided between them. Appellant contends that respondent had actual knowledge which should have convinced him that John Philipsen had no authority to convey the property under the power of attorney theretofore issued to him. The trial court held that respondent was entitled to rely upon the record,

and that the deed to respondent from Olive B. Mignon conveyed good title.

It must be remembered that conveyance to respondent was not by deed executed by Mr. Philipsen as attorney-in-fact. Respondent's deed came from Olive B. Mignon, and the abstract submitted to respondent undoubtedly showed good title in respondent's grantor.

Laws of 1927, chapter 278, p. 670, relates to the recording of instruments concerning real property. Section 8 of this chapter, p. 673 (Rem. Rev. Stat., § 10596-8 [P. C. § 1914-8]) reads as follows:

"A power of attorney or other instrument recorded pursuant to this act is not deemed revoked by any act of the party by whom it was executed unless the instrument of revocation is also recorded in the same office in which the instrument granting the power was recorded."

Manifestly, the purpose of the legislature in enacting the statute above referred to was to give greater stability to land titles, by authorizing prospective purchasers or encumbrancers to rely upon the title as disclosed by the record.

The method to be followed in revoking a power of attorney is provided by the act, and affords one who has executed such a power an easy method by which the same may be rendered void from the date the instrument of revocation is recorded.

We find little authority which is helpful in determining the legal question here presented. In the case of *Auwarter v. Kroll*, 79 Wash. 179, 140 Pac. 326, the question of whether or not a power of attorney would "operate upon after-acquired property" was considered. In connection with this phase of the case, this court said:

"We think it will hardly be contended, under a general power such as the one before us, that an agent

would not have authority to act with reference to all manner of business until the power is formally revoked. But appellant insists that, inasmuch as the power was given with reference to certain orchard tracts upon which appellant had a mortgage containing a contract to release as the tracts were sold, the power must be construed with reference to the intention of the parties; and this being so, the agent could not bind defendant upon any contract pertaining to the Lead Mines Company. Under certain circumstances, the power of an agent will be determined by reference to the intent of the parties, and the person dealing with an agent is held to act at his peril; but where the power is general and there is no ambiguity or uncertainty in the instrument creating the agency, one dealing with an agent is not bound to look beyond the instrument itself, or to make any inquiry that might lead to any secret reservation or understanding as between the principal and his agent at the time the power of attorney was executed. 31 Cyc. 1325-1327. This rule governs this case, and we find no merit in appellant's first assignment of error."

Respondent knew nothing of the existence of the power of attorney until about the time the money was deposited in the bank, when he saw the abstract. He agreed to pay for a deed from Olive B. Mignon, if the record showed good title in her. Pursuant to this arrangement, respondent delivered four thousand dollars to the bank. If, at that time, Olive B. Mignon's title to the property was merchantable, respondent was subjected to the possible hazard of a suit for specific performance on the part of Mrs. Mignon if he, without good reason, refused to complete the deal.

Appellant argues that respondent had some notice as to some supposed lack of authority on the part of Mr. Philipsen as attorney-in-fact to sign a deed on appellant's behalf, but the record does not support such a contention. Prior to the meeting at appellant's office early in July, after the deposit of the money, the most

that can be said is that respondent had reason for believing that no offer which he had made, prior to the offer which Mrs. Philipsen agreed to in Bremerton, had been acceptable to appellant. When Mrs. Philipsen called on respondent in Bremerton and told him, as he testified, and his testimony was not denied, that all parties concerned had agreed to the sale, respondent had no reason for disbelieving her. He was paying over $350 more for the land than he had previously offered.

The deed to Olive B. Mignon and the power of attorney were of record in the auditor's office, having been filed June 28th, and apparently the abstract disclosed a merchantable title in Mrs. Mignon. Appellant knew that he owned an interest in real estate in Kitsap county, and had failed to revoke the power of attorney. While he offered to testify that he had been informed by one of his sisters that Mr. Philipsen had received all moneys due him, and that the power of attorney had been destroyed, he assumed the risk of a situation which might result to his disadvantage if he failed to protect himself by following the method prescribed by law.

While appellant testified that the property was worth more than respondent was paying therefor, even his estimate does not present such an inadequacy of price as to cause fraud to be presumed, in the absence of other suspicious circumstances, and we find no basis in the record for holding that respondent was guilty of fraud or of participation in any conspiracy to deprive appellant of any of his rights.

It might well be argued that the power of attorney to John Philipsen showed on its face that it was a power coupled with an interest, and as such not revocable as long as the interest existed. For the purposes of this case, however, we disregard this phase

of the case, and assume, without deciding, that Mr. Philipsen was a mere attorney-in-fact, whose agency was revocable at the will of his principals, or any of them.

Appellant argues that the clause in the power of attorney above quoted, referring to the repayment of money expended by John Philipsen, is a limitation on the authority of the attorney-in-fact, and called for further inquiry by respondent. The document cannot be so construed. As long as the power stood upon the records unrevoked, its effect was at least equal to that of a general power of attorney which contained no such paragraph. Under the facts of this case, one accepting a title by or through a conveyance executed under such a power is not required to satisfy himself by independent examination that, as between the principal and his attorney-in-fact, no change in circumstances had arisen which, as between them, might have introduced some new element into the relationship. The record discloses nothing said or done by appellant of which respondent at any time had knowledge which could, even in the absence of such a statute as Rem. Rev. Stat., § 10596-8, *supra,* amount to a revocation of a power of attorney.

Appellant cites the case of *Ross v. Kenwood Inv. Co.,* 73 Wash. 131, 131 Pac. 649, as authority for the proposition that the apparent authority of an attorney-in-fact, as disclosed by the record, cannot be relied upon in the face of actual notice or knowledge to the contrary. This court called attention to the rule that persons dealing with an attorney-in-fact, acting under a general power of attorney, could assume that the authority of the attorney-in-fact was as broad as the power of attorney, unless the persons dealing with the agent had notice of some fact suggesting inquiry upon their part that the agent did not possess all of the

powers evidenced by the language of the instrument, or that the power had been exercised in fraud of the principal's rights. In the case cited, it was held that a principal was bound by the acts of her attorney-in-fact.

In the case at bar, respondent deposited his money in the bank with the deed from Mrs. Mignon to himself, subject to his examination of the title. He knew nothing of the existence of any power of attorney until he received the abstract, the exact date of the delivery of the abstract to respondent not being disclosed. There is no testimony to the effect that the power of attorney was ever referred to in any conversation between respondent and appellant. The utmost that can be contended by appellant is that on, or soon after, July 2nd, after the deposit of the money and deed in the bank, respondent was advised that appellant at that time did not want to sell his interest in the real estate which appellant's attorney-in-fact, acting for appellant, had conveyed over a week previously. Assuming that respondent knew that appellant was entitled to receive some portion of the purchase price of the property, respondent was entitled to rely upon the record, and the deed which he received from Olive B. Mignon conveyed to him good title to appellant's interest in the land. Respondent and appellant were dealing at arms length; no fiduciary relation existed between them.

The deed to Mrs. Mignon had already been executed and recorded. Appellant's contention seems to be that when, during the interview between appellant and his sister and respondent, respondent became aware of the fact that appellant did not wish to sell his interest in the land for the sum to be paid, respondent should have advised him as to what had happened up to that time. Appellant's sister was present, and apparently

did not deem it incumbent upon her to explain the situation to appellant, and it cannot be held that any duty rested upon respondent to volunteer any explanation which appellant's own sister did not think proper to make. Upon the record, there was no lack of power on the part of appellant's attorney-in-fact, Mr. Philipsen. Appellant can only argue that his attorney-in-fact had exercised his power contrary to appellant's wish.

Appellant contends that the trial court erred in admitting, over his objection, testimony introduced by respondent to the effect that Mrs. Philipsen or members of her family other than appellant had, sometime before the deal with respondent, offered the property for sale at a price less than respondent paid. The trial court, while admitting this testimony, indicated that it was of little importance. In determining the issues presented, we completely disregard this testimony. It has no bearing upon the issues to be decided.

Appellant also assigns error upon the admission of the testimony of a witness offered by respondent, who stated that, in his opinion, the property was worth about four thousand dollars, appellant contending that the testimony was immaterial, and that the witness was not qualified to answer. In our view, this testimony should be, and the same is, disregarded.

Appellant contends that the trial court erred in not striking a portion of the testimony of Mr. Philipsen, who testified by deposition. We regard this testimony as entirely immaterial, and disregard the same.

Appellant contends that the trial court erred in admitting in evidence the abstract of title to the property, which was offered by respondent. The abstract, while not conclusive as to facts shown by the record, was admissible for what it was worth. The original deeds to Mrs. Mignon and to respondent and

the original power of attorney are also in evidence. The admission in evidence of the abstract, which was not attacked as incorrect, was no wise prejudicial.

Finally, appellant contends that the trial court erred in refusing to permit appellant to testify that his sister, Laura Philipsen, had told him that all sums due Mr. Philipsen had been paid, and that the power of attorney to Mr. Philipsen had been destroyed. Mr. Philipsen in his deposition testified that money was still due him, and for the purposes of this opinion, it may be considered that appellant testified in accordance with the offer of proof made by his counsel. In this connection, we have also considered that appellant testified that, in his opinion, the property was worth more than the amount which respondent paid therefor.

After careful consideration, we are of the opinion that the judgment of the trial court was correct, and the same is accordingly affirmed.

STEINERT, C. J., MILLARD, GERAGHTY, and SIMPSON, JJ., concur.