[No. 60928-4.   En Banc.   January 5, 1995.]

NORMAN BERG, ET AL, *Respondents*, v. ROBERT Y. TING, ET AL, *Petitioners*.

*Betts, Patterson & Mines, P.S.,* by *Bruce H. Hurst, Karen J. Summerville,* and *Thomas F. Peterson,* for petitioners.

*Davis Wright Tremaine,* by *Stephen M. Rummage,* for respondents.

BRACHTENBACH, J. — Neighboring residential property owners dispute whether a grant of easement complies with the statute of frauds, and, if not, whether the easement is nevertheless enforceable under the doctrine of part performance.

Norman and Marjorie Berg (the Bergs) and Robert Y. and Kathy Ting (the Tings) are owners of adjacent waterfront parcels on Lake Washington in Seattle. The Bergs brought an action to quiet title to an easement across the Tings' property. The trial court granted summary judgment in favor of the Tings on the basis that the grant of easement did not comply with the statute of frauds, and was void and unenforceable. The Court of Appeals reversed, holding that although the grant of easement did not comply with the statute of frauds, it was enforceable under the doctrine of

part performance. We reverse the Court of Appeals, and reinstate summary judgment in favor of the Tings.

The Tings' property is located directly northeast of and adjacent to the Bergs' property. The Tings purchased their property in October 1988 from John and Beverly Cahill. In 1983, the parcel directly northeast of and adjacent to the Cahills' property was owned by Dr. and Mrs. Kenneth Hanson, who had signed a contract to sell the parcel to Mr. and Mrs. Stuart Young. Later in 1983, the Cahills and the Youngs submitted an application to the City of Seattle for a short plat which would allow them to subdivide the Cahill and Young properties. They proposed dividing the two parcels into seven lots, five on the Hanson property and two on the Cahill property.

The Bergs publicly opposed the short plat application. They wrote letters to the City of Seattle and neighboring property owners, and expressed opposition at neighborhood meetings. In 1984, the Cahills, the Youngs and the Bergs met, and agreed that the Bergs would withdraw their opposition to the short plat application in exchange for an easement down the subdivision's driveway and across the Cahill property to the Berg property. On March 3, 1984, the parties executed their written agreement and a grant of easement. The Bergs dropped their opposition to the application.

The next month, the City gave conditional approval to the short plat application. Although the plan still contained seven lots, they were reconfigured. Consequently, on June 8, 1984, the parties executed an updated agreement prepared by the Bergs' attorney. On the same day, they executed the grant of easement which is at issue in this case. The grant of easement provides in part that the

[g]rantors have combined their respective properties for the purpose of subdividing them and have applied to the City of Seattle for approval of a Short Subdivision, Variance, Shoreline Substantial Development Permit and a SEPA-Environmental Determination, under Master Use Permit Application No. 83-549 (the "Application").

Clerk's Papers, at 202-03.

Paragraph 5 of the grant then provided:

5. Grant of Easement. For value received, the receipt of which is hereby acknowledged by Grantors, Grantors hereby grant, convey and warrant to Grantees and their licensees, invitees, heirs, successors and assigns a perpetual, nonexclusive easement in, under and over the following tracts:

TRACT A: The area designated as the private driveway across Lots A, B, C, and F, the exact location of which shall be determined by reference to the conditionally granted Application when the same is finally approved and recorded; and

TRACT B: That portion of Lots F and G of the Short Subdivision applied for under the Application as the same is finally approved and recorded situated between the private driveway referred to in TRACT A above and the shore of Lake Washington, the upland boundary of which portion shall be a line commencing at the northwest corner of Lot G and running southerly to the point of intersection with the southerly boundary of the private driveway referred to in TRACT A above, thence westerly 50 feet along the southerly boundary of said private driveway, thence southerly, in a line parallel to the westerly boundary of Lot G, to the southerly boundary of Lot F;

to provide ingress and egress and for utilities to and for the benefit of the Berg Property, subject to the following terms and conditions:

A. With respect to Tract B, Grantees shall have the right, but not the obligation, to locate and construct a 20-foot road across Tract B between any point on the private driveway referred to in Tract A and Grantees' property line . . ..

Clerk's Papers, at 203. The grant also provided that the Cahills could construct a 20-foot-wide road from the private driveway to provide access to the beachfront of lot F or G, and that if they did, the Bergs could not locate their own road, but could locate and construct a 20-foot road from such road constructed by the Cahills to the Bergs' property line. Clerk's Papers, at 203-04. The grant provided that once a road was constructed to the Bergs' property line, it was to be surveyed and the agreement modified to limit the scope of easement over the surveyed road, but that prior to such a survey and modification, "the easement shall encompass all of Tract B." Clerk's Papers, at 204.

Appended to the document were the legal descriptions of the Berg, Cahill (Ting) and Young properties.

The grant provided that in the event of litigation, the prevailing party would be entitled to costs and attorney fees.

The grant of easement was recorded on June 18, 1984. The Youngs' interest in the Hanson property expired, and they did not purchase it. Thus, the grant of easement (which was not signed by the Hansons) involves only the Cahill property.

Final approval of the short plat application did not occur until May 2, 1988. As finally approved, the application contained six, not seven lots, and the lots were reconfigured and redesignated.

As discussed hereafter, a grant of easement must describe a specific subservient estate; that is an absolute. Here, the grant of easement attempts to describe the subservient estate by reference to a future "finally approved" short plat application. That document did not exist until almost 4 years after the grant.

Examination of the finally approved short plat discloses beyond question the fatal error of the attempted description of the subservient estate. The most glaring deficiency is the description of tract B as part of the subservient estate. It describes the easement as being over a portion of lots F and G as in the finally approved short plat. There is no lot G in the finally approved short plat. Equally fatal is the fact that in the finally approved short plat the purported easement appears (so far as it affects Tings' property) to be located entirely on lot E, but the grant describes no easement over lot E.

The finally approved application was recorded on May 6, 1988, several months before the Tings purchased the Cahill property in October. The deed from the Cahills to the Tings does not mention the easement. The Bergs never used or improved any of the Cahill property for an easement. Shortly after the Tings purchased the property, Mr. Berg mentioned the easement to the Tings. The Tings have refused to acknowledge the easement.

In March 1990, the Bergs brought this action to quiet title in the easement across the Tings' property. The parties filed cross motions for summary judgment. The Tings argued that the grant of easement was invalid because it did not adequately describe the servient estate and therefore violated the statute of frauds. The Tings pointed out that the grant of easement provided that the location of tracts A and B would be determined with regard to the finally approved and recorded short plat application.

The trial court granted the Tings' motion. The trial court said in its oral ruling that the grant did not sufficiently describe the servient estate, but instead referred to a future document with uncertain terms and uncertain legal descriptions. The trial court also commented, in response to the Bergs' claim that the statute of frauds should not be applied to work a fraud, that it found no evidence of fraud on the Tings' part, noting particularly that the Bergs' attorney drafted the grant of easement. The trial court awarded the Tings costs and attorney fees.

The Bergs appealed. The Court of Appeals reversed, holding that the grant of easement violated the statute of frauds, but is enforceable under the doctrine of part performance. The court also reversed the award of attorney fees in favor of the Tings, and directed the trial court to award fees in favor of the Bergs. The court awarded the Bergs costs and attorney fees on appeal. In a motion for reconsideration, the Tings argued for the first time that they are bona fide purchasers. The Court of Appeals denied the motion for reconsideration.

The Tings' petition for review was granted.

The trial court and the Court of Appeals both held that the grant of easement is void on its face and does not comply with the statute of frauds. However, while the trial court granted summary judgment to the Tings on this basis, the Court of Appeals held that the grant of easement is enforceable under the doctrine of part performance. The Bergs maintain that, contrary to the holdings of the trial court and the Court of Appeals, the grant of easement does comply with the statute of frauds.

■■ Under RCW 64.04.010, "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed . . .". Every deed "shall be in writing, signed by the party bound thereby, and acknowledged . . .". RCW 64.04.020. Although it is an incorporeal right, an easement is an interest in land. *See Perrin v. Derbyshire Scenic Acres Water Corp.*, 63 Wn.2d 716, 388 P.2d 949 (1964). An express grant of easement is a conveyance within the meaning of the statute of frauds. *E.g., Ormiston v. Boast*, 68 Wn.2d 548, 550, 413 P.2d 969 (1966).

■■ To comply with the statute of frauds, "a contract or deed for the conveyance of land must contain a description of the land sufficiently definite to locate it without recourse to oral testimony, or else it must contain a reference to another instrument which does contain a sufficient description." *Bigelow v. Mood*, 56 Wn.2d 340, 341, 353 P.2d 429 (1960). However, in the case of an easement, a *"deed [of easement]* is not required to *establish the actual location* of an easement, but *is required to convey an easement" which encumbrances a specific servient estate.* (Some italics ours.) *Smith v. King*, 27 Wn. App. 869, 871, 620 P.2d 542, 24 A.L.R.4th 1049 (1980) (citing cases). The servient estate must be sufficiently described. *See Seattle v. Nazarenus*, 60 Wn.2d 657, 660-61, 374 P.2d 1014 (1962).

Here, the writing describes the interest conveyed as "a perpetual nonexclusive easement in, under and over" two tracts of land, tract A and tract B. These tracts are described as certain portions of the lots of the conditionally granted short subdivision application "when the same is finally approved and recorded" and "as the same is finally approved and recorded . . .". Clerk's Papers, at 203. The granting clause thus refers to a description of the encumbered property as the same is approved in the future, and refers to a then *nonexistent instrument* as defining the servient estate. The grant thus did not contain a sufficient description of the land nor did it reference an instrument which did contain such a description.

The Bergs argue, however, that the grant of easement complies with the statute of frauds in accord with the analysis in *Netherlands Am. Mortgage Bank v. Eastern Ry. & Lumber Co.*, 142 Wash. 204, 252 P. 916 (1927). They argue that the grant was of a "floating easement" and rely on the principle that the easement's location need not be exactly established in the conveyancing instrument. They point out that appended to the grant of easement were legal descriptions of the three parcels — the Young and Cahill parcels (which were originally intended to be encumbered by the easement) and the Berg parcel. They reason that the Cahill property was thus sufficiently described and the location of the easement on that property could be established in the future.

In *Netherlands*, the granting clause conveyed strips of land between parallel lines on each side of the grantee's railroad

> as the same may be laid out and built on and across sections numbers seven (7) seventeen (17) twenty-one (21) and twenty-three (23) all in township number fourteen (14) north of range one (1) west of the Willamette Meridian, to be used . . . for railroad right of way or other railroad purposes . . ..

*Netherlands*, at 205. The court held the grant of easement granted the railroad the right to select the location of the easement over the described sections. However, the servient estate — the sections which were encumbered by the floating easement — were specifically described in the granting clause. Here, in sharp contrast, the granting clause only describes tracts A and B, and does not describe the entire Cahill parcel. If the granting clause had described the entire Cahill parcel as the servient estate, the case might be analogous to *Netherlands*. *Netherlands* does not support the Bergs' argument.

Moreover, accepting the Bergs' argument would require that we ignore language in the granting clause which clearly shows the parties' intent that less than the entire Cahill property comprise the servient estate. Paragraph 5 of the grant, titled "Grant of Easement", does not refer to the entire Cahill property. Nothing in the granting clause even hints that the

entire Cahill property is the servient estate; instead the granting clause contains a description of tracts which, while inadequate as a description of the servient estate, obviously shows that less than the entire Cahill property was intended as the servient estate. Where it is manifestly apparent that the parties' granting language was clearly *not* intended to define the entire Cahill (and Young) parcels as the servient estate, we will not substitute the appended legal description of the Cahill parcel for the description in the granting clause in order that the Bergs may be saved from the statute of frauds problem which the grant of easement presents.

It is essential to the integrity of the recording system and the stability of real estate titles that we reject the contention that it was adequate to append the description of the entire Cahill tract. We have recognized that the legislative purpose in enacting RCW 65.08.070 was "to give greater stability to land titles, by authorizing prospective purchasers or encumbrancers to rely upon the title *as disclosed by the record.*" (Italics ours.) *Adams v. Mignon*, 197 Wash. 293, 298, 84 P.2d 1016 (1938); *accord Lazov v. Black*, 88 Wn.2d 883, 886, 567 P.2d 233 (1977).

The Legislature has recognized the vital importance of being able to determine the exact legal description from the record. RCW 65.04.030(1) provides in part: "[D]eeds, contracts and mortgages of real estate described by lot and block and addition or plat, shall not be filed or recorded until the plat of such addition has been filed and made a matter of record". Under that provision, the grant of easement was not entitled to be recorded because it described lots in a short plat not yet in existence, much less approved and recorded. The grant itself contains its own fatal deficiency by referring to and relying entirely on the description of lots in a short plat to be later (almost 4 years in fact) approved and recorded.

The Bergs maintain, however, that the agreement should be reformed to reflect the parties' intent (and they rely on parts of the record supporting their view of that intent), and then the agreement's validity should be assessed under the statute of frauds, citing *Snyder v. Peterson*, 62 Wn. App. 522,

527, 814 P.2d 1204 (1991), where the court reformed a contract before assessing its validity. The Tings maintain, to the contrary, that under *Howell v. Inland Empire Paper Co.*, 28 Wn. App. 494, 624 P.2d 739, *review denied*, 95 Wn.2d 1021 (1981) and cases cited therein, an agreement containing an inadequate legal description to be conveyed is void and is not subject to reformation or specific performance.

■ As to reformation, in *Williams v. Fulton*, 30 Wn. App. 173, 176 n.1, 632 P.2d 920, *review denied*, 96 Wn.2d 1017 (1981), the court addressed the flat statement in *Howell* that an agreement containing an inadequate legal description is void and is not subject to reformation. The court in *Williams* said the statement was sufficient in the fact pattern in *Howell*, but correctly added that *Howell* should not be construed so as to prevent reformation in an appropriate factual setting. *See, e.g., Lofberg v. Viles*, 39 Wn.2d 493, 236 P.2d 768 (1951) (conveyances of real property may be reformed on the ground of mutual mistake where mistake is indicated by clear and convincing evidence); *see generally* Warren L. Shattuck, *Contracts in Washington, 1937-1957: Part II*, 34 Wash. L. Rev. 345, 360-61 (1959). *Snyder v. Peterson, supra,* cited by the Bergs, is in accord, and stands for the proposition that where a scrivener's error or mutual mistake leads to the deficient description, the contract may be reformed. *Snyder*, at 527.

Here, however, there is no evidence of any mutual mistake or scrivener's error resulting in an inadequate description, and reformation of the agreement prior to assessing the sufficiency of the description for statute of frauds purposes is not appropriate.[1] Again we note that the grantees' (Berg) attorney drafted the grant relying on a nonexistent docu-

---

[1]There are cases permitting a correct legal description of land to be inserted by an agent subsequent to an earnest money agreement or option to purchase, without violating the statute of frauds. *See* 2 Washington State Bar Ass'n, *Real Property Deskbook* § 37.36, at 37-24 (2d ed. 1986). Those cases are not relevant in this case, which does not involve either an earnest money agreement or option to purchase and where there was no authorization for an agent to insert a correct legal description at a later time.

ment as the sole source of the description of the subservient estate.

As to the statement in *Howell* that an instrument containing an inadequate description is not subject to specific performance, the case which is cited for the proposition did not address the part performance doctrine. *Herrmann v. Hodin*, 58 Wn.2d 441, 364 P.2d 21 (1961), *cited in Howell,* at 496. Given that the part performance doctrine may be applicable in the case of an oral agreement, which of course would entail an inadequate written description (none at all), it follows that the doctrine may apply in a case involving an inadequate written description. Under the doctrine of part performance, both this court and the Court of Appeals have specifically enforced agreements containing inadequate descriptions. *Stephens v. Nelson*, 37 Wn.2d 28, 35, 221 P.2d 520 (1950) (later the conclusion in *Stephens* that a description is defective if it omits the county and state was reversed in *Lofberg v. Viles, supra); Dunbabin v. Allen Realty Co.*, 26 Wn. App. 660, 665, 613 P.2d 570 (1980). However, as discussed below, all the terms of the contract must be proved.

Another issue exists in this case with regard to whether the agreement may be specifically enforced under the doctrine of part performance. The Tings were not parties to the agreement. However, specific performance may be granted with respect to subsequent purchasers where the subsequent purchasers have notice of the rights of another under a contract conveying an interest in land. *Baird v. Knutzen*, 49 Wn.2d 308, 311, 301 P.2d 375 (1956). A significant question in this case, therefore, is whether the Tings are bona fide purchasers for value; if so, specific performance should not be granted. In their motion for reconsideration by the Court of Appeals, the Tings for the first time argued that they are bona fide purchasers of the Cahill property who took without actual or constructive notice of the easement claimed by the Bergs, and therefore they took free of the encumbrance.

The Tings never raised the issue in the trial court, though, and under well-settled principles we will not address

the issue. RAP 2.5(a); *Kramarevcky v. Department of Social & Health Servs.*, 122 Wn.2d 738, 750, 863 P.2d 535 (1993).

Our refusal to address the bona fide purchaser question does not prevent resolution of this case, however. Even if the doctrine of part performance is otherwise applicable, its requisites are not satisfied in this case.

■ Under the doctrine of part performance, an agreement to convey an estate in real property which is not in writing in compliance with the requisites of RCW 64.04.010 and .020 may be proved without a writing, and specifically enforced, if there is sufficient part performance of the agreement. *Miller v. McCamish*, 78 Wn.2d 821, 826, 479 P.2d 919 (1971) (citing cases).

■ The part performance doctrine "is based on the premise that in certain situations it would be fraudulent to permit a party to escape performance of his [or her] duties under an oral contract after . . . [permitting] the other party to perform in reliance upon the agreement." 2 Washington State Bar Ass'n, *Real Property Deskbook* § 37.40, at 37-27 (2d ed. 1986) (citing *Miller v. McCamish, supra*).

■ ■ This court has identified three factors, or elements, which are examined to determine if there has been part performance of the agreement so as to take it out of the statute of frauds:

(1) delivery and assumption of actual and exclusive possession;

(2) payment or tender of consideration; and (3) the making of permanent, substantial and valuable improvements, referable to the contract.

*Kruse v. Hemp*, 121 Wn.2d 715, 724-25, 853 P.2d 1373 (1993); *Powers v. Hastings*, 93 Wn.2d 709, 717, 612 P.2d 371 (1980). In addition, where specific performance of the agreement is sought, the contract must "be proven by evidence that is clear and unequivocal and which leaves no doubt as to the terms, character, and existence of the contract." *Miller*, at 829 (quoting *Granquist v. McKean*, 29 Wn.2d 440, 445, 187 P.2d 623 (1947)); *see Williams v. Fulton*, 30 Wn. App. 173, 178, 632 P.2d 920, *review denied*, 96 Wn.2d 1017 (1981); *Powers*, at 713-17 ("clear and unequivocal" evidence stan-

dard applies where specific performance sought, but lesser standard applies where damages sought); 8A George W. Thompson, *Real Property* § 4463, at 361 (1963 repl.).[2]

As to whether there is sufficient evidence of part performance, the issue is whether consideration alone is sufficient part performance of the grant of easement. There is no dispute that of the three factors set forth above, the only performance alleged here is the Bergs' withdrawal of their opposition to the subdivision proposal. The Tings maintain that consideration alone is not enough to show part performance.

In *Richardson v. Taylor Land & Livestock Co.*, 25 Wn.2d 518, 529, 171 P.2d 703 (1946), the court observed that there is a wide diversity of opinion about the relative importance of the three factors. Where all are found, the strongest case is generally presented, and conversely, where none is found, there is little to warrant a decree of specific performance. *Richardson*, at 529. There is a conflict as to whether any single one of the factors is either indispensable or all-sufficient, and the payment of consideration is the least convincing of the three. *Richardson*, at 529. The court said "no positive rule has been, or can be, formulated for the government or decision of all cases indiscriminately, but that the determination of each case must depend upon the particular facts and circumstances involved therein." *Richardson*, at 529. The court noted: "This court has uniformly held that payment of the purchase price, in whole or in part, is not of itself a sufficient part performance to remove an oral agreement for the sale of land from the operation of the statute" of frauds. *Richardson*, at 530.

More recently, in an opinion handed down after the Court of Appeals issued its opinion in this case, this court said that

---

[2]In *Kruse v. Hemp, supra*, we declined to address whether there was part performance, because there was insufficient evidence of a contract. Here, the trial court did not reach the part performance issue and thus did not assess whether there is sufficient evidence of a contract under the clear and unequivocal evidence standard for specific performance of the contract. We also do not reach this issue.

the doctrine of part performance "requires at least two" of the three factors. *Kruse v. Hemp*, 121 Wn.2d 715, 724-25, 853 P.2d 1373 (1993). This statement is dictum, since the court held that the doctrine of part performance did not apply because the parties never agreed on the material and essential terms of a contract. *Kruse*, at 725. As a definite statement, the statement is also somewhat inaccurate, because in prior cases where the doctrine of part performance was addressed, the court never set forth a rigid requirement that two of the three factors be present. In general, though, the court's dictum accords with the observation that usually where part performance is found, two of the three factors are present; however, there is no absolute rule that two of the three factors must be present for the doctrine of part performance to take a real estate conveyancing agreement out of the statute of frauds. This clarification of the language in *Kruse* necessarily requires rejecting the Tings' argument that because only one, rather than two, of the three factors is present in this case, the doctrine of part performance does not apply.

We agree with the Tings, however, that consideration alone is insufficient evidence of part performance to take the grant of easement out of the statute of frauds. In *Miller*, at 828-29, the court said: "As evidenced by the test required in this state to successfully assert part performance, the court's overriding concern is *precisely directed toward and concerned with a quantum of proof certain enough to remove doubts as to the parties' oral agreement*". The court said that where relief is granted from the statute of frauds, it is for "the specific reason that *to enforce the statute would be to defeat the very purpose for which it was enacted — i.e.,* the prevention of fraud arising from *uncertainty* inherent in oral contractual undertakings." *Miller*, at 829.

The Tings aptly point out that while the nonmonetary consideration in this case may provide some evidence of the existence of some kind of contract, it reveals nothing about the character or terms of any contract. We agree. In this case the evidentiary function of the doctrine of part performance is not satisfied by consideration alone.

The Bergs urge, however, that where a grant of easement is concerned, the three factors of part performance will have diminished probative value because possession will never be exclusive, and making valuable improvements will often be inconsistent with limited rights granted. While this observation may have some validity, it does not follow that consideration alone should be sufficient part performance to take a grant of easement out of the statute of frauds. Although the part performance doctrine, as recognized in *Richardson*, is a flexible doctrine, its evidentiary function must be preserved, and we will not abandon that function simply because the doctrine may be difficult to apply in certain situations.

In reaching its conclusion that the doctrine of part performance is satisfied in this case, the Court of Appeals relied upon the Restatement (Second) of Contracts § 129 (1981). The court said § 129 is consistent with the Washington approach discussed in *Richardson* and *Powers, i.e.,* that the determination whether there has been part performance depends upon the facts and circumstances of each case.

Contrary to the Court of Appeals' reasoning, § 129 is not consistent with the part performance doctrine recognized by this court.

Under § 129:

> A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement.

Restatement (Second) of Contracts § 129 (1981). Comment a to this section states that it restates what is widely known as the part performance doctrine. The Court of Appeals found comment d to the section particularly apt:

> "[T]he making of the promise [must be] admitted or . . . clearly proved[,] [t]he promisee must act in reasonable reliance on the promise, before the promisor had repudiated it, and the action must be such that the remedy of restitution is inadequate. If these requirements are met, neither the taking of possession nor payment of money nor the making of improvements is

essential. Thus, the rendering of peculiar services not readily compensable in money may justify specific performance, particularly if the promisee has also taken other action in reliance on the promise."

*Berg v. Ting*, 68 Wn. App. 721, 732, 850 P.2d 1349 (1993) (quoting Restatement (Second) of Contracts § 129 cmt. d (1981)), *review granted*, 123 Wn.2d 1013 (1994).

Section 129 is a specific application of § 139, which provides that promissory estoppel may serve as a substitute for compliance with the statute of frauds. Comment a to § 139 states expressly that "[s]ections 128 and 129 state particular applications of the same principle [as section 139] to land contracts". Restatement (Second) of Contracts § 139 cmt. a.[3]

Section 129, and in particular comment d as applied by the Court of Appeals, requires none of the three factors which we have recognized as evidence of part performance. The Court of Appeals cited two cases in support of its application of § 129. In one of these cases, *Kirk v. Tomulty*, 66 Wn. App. 231, 237, 831 P.2d 792, *review denied*, 120 Wn.2d 1009 (1992), the court said that part performance of a contract on one side and an acceptance of benefit by the other can take a conveyance out of the statute of frauds. The court in *Kirk* added: "Equity should intervene to deny one party what would clearly be an unjust enrichment as long as the character, terms and existence of the contract can be clearly and unequivocally established to the satisfaction of the court." *Berg*, at 732 (quoting *Kirk*, at 237). The court in *Kirk* said that the critical inquiry is whether there was intent to create an easement. *Kirk*, at 237. However, unlike the case now before the court, in *Kirk* the part performance consisted of both consideration and improvements, as at least part of the

---

[3]Section 139 has not been adopted in this state. Cases where the section has been urged have been resolved on other grounds. *See Family Med. Bldg., Inc. v. Department of Social & Health Servs.*, 104 Wn.2d 105, 702 P.2d 459 (1985); *Lectus, Inc. v. Rainier Nat'l Bank*, 97 Wn.2d 584, 647 P.2d 1001 (1982); *Lige Dickson Co. v. Union Oil Co.*, 96 Wn.2d 291, 635 P.2d 103 (1981); *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 616 P.2d 644 (1980). Recently, the court heard oral argument in a case where the Court of Appeals applied § 139 in the context of an employment contract. *Greaves v. Medical Imaging Sys., Inc.*, 124 Wn.2d 389, 879 P.2d 276 (1994).

easement area at issue there was improved with an access road in accord with the easement agreement. *Kirk*, at 237-38. Also, the court in *Kirk* did not address the 3-factor formulation set out in *Kruse v. Hemp*, 121 Wn.2d 715, 853 P.2d 1373 (1993), *Powers v. Hastings*, 93 Wn.2d 709, 612 P.2d 371 (1980), and *Richardson v. Taylor Land & Livestock Co.*, 25 Wn.2d 518, 171 P.2d 703 (1946).

In *Garbrick v. Franz*, 13 Wn.2d 427, 431, 125 P.2d 295 (1942), also cited by the Court of Appeals, the court said that the test for the part performance exception is: "Have the acts of one of the parties changed his situation to such an extent that he cannot be adequately compensated in damages or placed in his original position?" This language must not be read out of context, though. The court in *Garbrick* proceeded to discuss the kinds of acts which constitute part performance, payment, possession, and improvements, and specifically in that case found that significant improvements by a lessor in possession constituted sufficient part performance of a lease in excess of 1 year. On its facts and in its analysis, *Garbrick* is distinguishable from the Restatement (Second) approach which the Court of Appeals used.

We decline to follow § 129 in this case. Application of § 129, and in particular comment d, to enforce the grant of easement would run counter to the evidentiary function underlying this state's part performance doctrine. The agreement does not contain an adequate description of the servient estate. Nothing about the consideration given, unique or otherwise, reveals anything about any real property transaction, and certainly nothing about the servient estate. We point out that where specific performance is sought, the party relying on the part performance doctrine must prove by clear and unequivocal evidence the existence and all the terms of the contract. However, that proof is *in addition to* establishing that there has been part performance. The three factors we have recognized have independent evidentiary import apart from the extrinsic evidence which must be presented to establish the existence and terms of the contract. Applying § 129 would require abandoning the evidentiary function of the

part performance doctrine in this case, and leave the establishment of the servient estate to extrinsic evidence alone — a result at odds with the statute of frauds.

In summary on this point, § 129 does not reflect Washington law, and we decline to depart from the protections which the statute of frauds and the part performance doctrine lend to real estate transactions.

The Bergs maintain that failure to order specific enforcement of the agreement will work a fraud, and injustice will result. It must be remembered, however, that the Bergs' attorney drafted the grant of easement, and could have properly included a legal description of the servient estate which would have satisfied the statute of frauds, for example, a metes and bounds description, or a description with incorporation of the then-existing plat application. Any harshness[4] of the result of requiring compliance with the statute of frauds (or, alternatively, sufficient part performance to meet the evidentiary function of the doctrine of part performance) could easily have been avoided. Moreover, there is no evidence that the Tings, who were not parties to the agreement, have committed fraud.

Finally, the Bergs argue that the Tings have admitted the existence and location of the easement in their answer to the complaint, and therefore have made a judicial admission which constitutes an exception to the statute of frauds. We have not previously recognized such an exception, and do not do so here. However, even if such an exception exists, there was no judicial admission in this case. As the Tings note, the Bergs allege in their complaint that the Tings have asserted that the servient estate is not locatable, and in their answer the Tings affirmatively state the servient estate is not locatable. The Tings also describe what the grant of easement "purports to grant" in their answer, referring to the grant of easement "claimed by plaintiff Berg". Clerk's Papers, at 54. Given these circumstances, we reject

---

[4]This record does not definitely establish whether, absent the Bergs' withdrawal of their opposition to the short plat, the subdivision would have been approved.

the Bergs' contention that a judicial admission has been made.

The Tings ask this court to reinstate their attorney fees awarded by the Superior Court, and to award them attorney fees on appeal, including those fees incurred in the Court of Appeals, based upon an attorney fees and costs provision in the grant of easement. We grant the Tings' request.

In summary, we hold that the grant of easement does not comply with the statute of frauds and that the doctrine of part performance does not apply in this case to take the grant of easement out of the statute of frauds. We reinstate the summary judgment and attorney fees award in favor of the Tings and direct awards of attorney fees on appeal and discretionary review in their favor. *See* RAP 18.1. We reverse the attorney fees awards in favor of the Bergs.

ANDERSEN, C.J., and UTTER, DOLLIVER, SMITH, GUY, and JOHNSON, JJ., concur.

DURHAM, J. (concurring in part, dissenting in part) — While I concur with the majority that the grant of the easement failed to conform with the statute of frauds, I disagree with the majority's rigid application of the doctrine of part performance. The majority effectively precludes a court from ever finding part performance in the grant of an easement. This is contrary to both the equitable nature of part performance, and the court's tradition of weighing the unique circumstances of each case to determine the enforceability of an agreement not in compliance with the statute of frauds. Because the facts of this case have not been fully resolved, I would deny both parties' motions for summary judgment and remand for trial.

The dispute before the court concerns whether a grant of an easement conforms with the statute of frauds, and if not, whether there was sufficient part performance to remove the agreement from the statute of frauds. While complicated, the relevant facts are as follows. In 1983, the Cahills submit-

ted a short plat application[5] to the City of Seattle. The Bergs, whose property lies directly adjacent to the Cahill property, publicly opposed this application. Fearing this would slow or thwart the application's approval, the Cahills offered the Bergs an easement across their property in return for their cessation of opposition. In 1984, the parties executed this agreement in writing.

It is undisputed that the Bergs dropped their opposition to the short plat application upon signing the grant of the easement. In 1988, Seattle approved a modified version of the original short plat application.[6] Shortly after Seattle's approval, the Cahills sold their property to the Tings. It is unclear whether the Tings knew of the easement when they bought the property. In any event, when the Bergs mentioned the easement to the Tings, they denied its existence. In response, the Bergs brought this action to quiet title in the easement.

In determining the enforceability of an agreement granting an easement, the court first considers whether the agreement conforms with the statute of frauds. If it does not, the court determines whether there is sufficient part performance to remove the agreement from the statute of frauds. *Kruse v. Hemp*, 121 Wn.2d 715, 724-25, 853 P.2d 1373 (1993); *Powers v. Hastings*, 93 Wn.2d 709, 717, 612 P.2d 371 (1980); *Richardson v. Taylor Land & Livestock Co.*, 25 Wn.2d 518, 528-29, 171 P.2d 703 (1946). Even if sufficient part performance exists, there must be "clear and unequivocal" evidence of the terms, character and existence of the agreement to compel its enforcement. *Miller v. McCamish*, 78 Wn.2d 821, 829, 479 P.2d 919 (1971) (quoting *Granquist v. McKean*, 29 Wn.2d 440, 445, 187 P.2d 623 (1947)).

By insisting on a written deed, the statute of frauds mitigates the possibility of perjury or fraud in agreements for the conveyance of real property. RCW 64.04.010, .020. The

---

[5]Approval of a short plat application gives the property owner permission to subdivide his or her property.

[6]In the initial short plat application, the property was divided into seven lots. By 1988, the lots had been reconfigured slightly and reduced to six.

statute of frauds reflects a recognition that fraud or perjury is more apt to occur when an agreement is based only on the strength of a handshake, rather than on the specifics of a written instrument. In contracts for the purchase or sale of real property, the statute of frauds precludes reliance on oral testimony by requiring that a written agreement meticulously describe the location of the property, or refer to another instrument that describes the location. *Herrmann v. Hodin*, 58 Wn.2d 441, 443, 364 P.2d 21 (1961). By requiring the clear delineation of property boundaries, the statute of frauds ensures a systematic and organized transfer of property.

In contrast, an easement merely allows one property owner to use the property of another. Since it is often both unnecessary and difficult to describe the exact boundaries of an easement, the statute of frauds does not require a description of the precise location of an easement. Instead, the statute of frauds dictates that a deed locate the easement on a specific servient estate. *Smith v. King*, 27 Wn. App. 869, 871, 620 P.2d 542, 24 A.L.R.4th 1049 (1980) (citing *Rhoades v. Barnes*, 54 Wash. 145, 102 P. 884 (1909)).

By its terms, the written agreement between the Bergs and Cahills granted an easement to the Bergs in consideration for their discontinuation of public opposition to the short plat application. For the grant of the easement to have satisfied the statute of frauds, it needed to locate the easement on a specific servient estate. *Smith v. King, supra.* The agreement used the conditionally approved short plat application as the basis for describing the location of the easement, but simultaneously stated that the location of the easement could be found by referring to the "finally approved" short plat application. As the Court of Appeals held, the grant of the easement could be reasonably read either as fixing the location of the easement, or as providing the method for locating the easement in the future. *Berg v. Ting*, 68 Wn. App. 721, 729, 850 P.2d 1349 (1993). As a result, it failed to refer to a specific servient estate, and thus did not comply with the statute of frauds.

This court has recognized, however, that there are instances where an inequitable result would follow from the failure to enforce an agreement that has not met the requirements of the statute of frauds. Where the repudiating party would reap a windfall, this court has developed the doctrine of part performance to remove such agreements from the statute of frauds and allow their enforcement.[7] *See Richardson v. Taylor Land & Livestock Co., supra* at 529. In these circumstances, sufficient part performance of the agreement overcomes the failure to conform with the statute of frauds. *Richardson*, at 528-29; *Powers v. Hastings, supra; Kruse v. Hemp, supra.*

Given that the grant of the easement between the Cahills and Bergs failed to conform with the statute of frauds, the next step is to determine whether there was sufficient part performance of the agreement to remove it from the statute of frauds.

This court originally developed the doctrine of part performance to allow enforcement of oral agreements for the purchase/sale of real property.[8] *Richardson v. Taylor Land & Livestock Co., supra; Powers v. Hastings, supra; Miller v. McCamish, supra.* We examined three elements or circumstances to determine whether sufficient part performance occurred:

> (1) delivery and assumption of actual and exclusive possession of the land; (2) payment or tender of the consideration, whether in money, other property, or services; and (3) the making of permanent, substantial, and valuable improvements, referable to the contract.

*Richardson*, at 528-29, *cited in Kruse*, at 724; *Powers*, at 717. We acknowledged some general, but flexible, guidelines.

---

[7]Furthermore, where evidence of an agreement "leaves no doubt as to [its] terms, character, and existence", it becomes unnecessary to apply the statute of frauds since the statute was developed to combat fraud resulting from uncertainty in agreements. *Miller v. McCamish*, 78 Wn.2d 821, 829, 479 P.2d 919 (1971) (quoting *Granquist v. McKean*, 29 Wn.2d 440, 445, 187 P.2d 623 (1947)).

[8]*Kruse v. Hemp*, 121 Wn.2d 715, 853 P.2d 1373 (1993) applied the doctrine of part performance to written agreements that failed to conform with the statute of frauds. *Kruse*, at 725.

First, evidence of all three elements provided the strongest case for invoking the doctrine of part performance, whereas the total absence of these elements provided the weakest. *Richardson,* at 529. Second, of the three elements, evidence of consideration provided the least support for a finding of part performance. *Richardson,* at 529. Third, generally two elements needed to be present for a finding of part performance, but as the majority admits the "court never set forth a rigid requirement that two of the three factors be present." Majority, at 558. Finally, when making a part performance determination, courts are not limited to considering solely the three elements outlined in the doctrine of part performance. *See Richardson,* 25 Wn.2d at 528-29.

In applying the doctrine of part performance, we emphasized that "no positive rule has been, or can be, formulated for the government or decision of all cases indiscriminately". *Richardson,* at 529. Rather, the facts and circumstances of each case must be considered on their own merits. *Richardson,* at 529. The court applied a flexible analysis to determine whether an agreement existed. *See Richardson,* at 529.

Today, however, the majority sets forth a rigid application of the doctrine of part performance which holds that it will not invoke the doctrine of part performance without a showing of actual possession or improvement of the property by the nonrepudiating party. In other words, of the three elements comprising the part performance doctrine, evidence of consideration alone will never result in a finding of part performance.

This approach ignores the context in which the doctrine developed. In purchase/sale agreements, actual possession and improvement of property, along with consideration, are likely indicators of a purchase/sale transaction. By definition, however, the grantee of an easement does not take actual possession of property. Whether the recipient of the grant of an easement may make improvements depends on the terms of the easement. As a result, consideration often is the only element of the doctrine of part performance applicable to a grant of an easement.

This is not to say that the doctrine of part performance has no relevant application to a grant of an easement that fails to conform with the statute of frauds. But it must remain flexible for it to be adaptable. Just as the statute of frauds recognizes the distinction between the grant of an easement and the purchase/sale of property, so must the doctrine of part performance. The majority's holding, which categorically rejects a finding of part performance based on consideration, effectively prohibits a court from ever finding part performance of a grant of an easement.

The majority defends its position by arguing that consideration "reveals nothing about the character or terms of any contract." Majority, at 558. The majority appears to believe that a finding of sufficient part performance will lead the court to immediately order specific performance of the agreement. For a court to order specific performance, however, there must be "clear and unequivocal" evidence as to the terms, character, and existence of the agreement.[9] *Miller v. McCamish*, 78 Wn.2d 821, 829, 479 P.2d 919 (1971) (quoting *Granquist v. McKean*, 29 Wn.2d 440, 445, 187 P.2d 623 (1947)). The majority engages in a complete departure from our precedent by arguing that the doctrine of part performance provides the sole evidentiary basis for determining the terms, character, and existence of an agreement.

Specific performance is appropriate where there is "substantial evidence of the terms, character and existence of the agreement, *and* of part performance". (Italics mine.) *Powers*, at 713. While we require evidence of part performance, we do not require that the part performance itself elucidate the terms of an agreement. *Powers*, at 722. Instead, we insist on a "quantum of proof" to demonstrate the exact terms of an agreement. (Italics omitted.) *Miller*, at 828-29. The elements comprising the doctrine of part performance can illuminate fully the terms, character, and existence of an agreement, or they can work in conjunction with other evidence. Their

---

[9]Where a party seeks damages, as opposed to specific enforcement, the terms, character, and existence of an agreement must be proved by a preponderance of the evidence. *Powers v. Hastings*, 93 Wn.2d 709, 716-17, 612 P.2d 371 (1980).

relevance will depend on the facts and circumstances of each case. In general, the evidentiary function of the doctrine of part performance will differ depending on whether the disputed agreement was oral or written.

When no written instrument exists to identify the terms and character of an agreement, the doctrine of part performance has greater evidentiary value. The elements of part performance — actual possession of the property, consideration, and improvements on the property — elucidate the terms and conditions of an agreement. In instances where there is no written instrument, the majority's position may be defensible. Under these circumstances, consideration has the weakest evidentiary value because the only term of the agreement it describes is payment.

Where there is a written agreement, however, it is necessary to consider the probative value of the writing. It is imperative to ask whether the writing dispels doubts as to the terms, character, and existence of the agreement. In the present case, the majority chooses to ignore the written agreement between the Bergs and Cahills which specifically grants an easement across the Cahills' former property. By ignoring a written instrument of significant evidentiary value, the majority thwarts its own attempt to discover the terms and conditions of the agreement.

Accordingly I would deny both parties' motions for summary judgment, and would remand for a trial on the merits to determine whether there was sufficient part performance to remove the agreement from the statute of frauds, and whether the evidence taken as a whole left no doubt as to the terms and character of the agreement.

MADSEN, J., concurs with DURHAM, J.

Reconsideration denied March 29, 1995.