IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| ARLENE PIERINI and SEBASTIAN PIERINI; PATRICIA READ-WILLIAMS and MATTHEW WILLIAMS; ADAM BOYD and MEGAN COOPER; and DALICE SNIDER and JOHN COOPER,<br><br>Respondents,<br><br>v.<br><br>LAWRENCE J. BARONE and MARLENE I. BARONE, and the marital community comprised thereof,<br><br>Appellants. | No. 87575-2-I<br><br><br><br>UNPUBLISHED OPINION |

BOWMAN, A.C.J. — Lawrence and Marlene Barone appeal from a summary judgment order declaring that an easement across their property is valid and enforceable, requiring them to remove all blockages and impediments, and ordering them to cease and desist from any further actions interfering with the easement. Finding no error, we affirm.

FACTS

Golden Ridge is a platted community in unincorporated King County. The plat contains a 26-acre protected wetland identified as "Tract A." The wetland abuts several Golden Ridge lots and is under the common ownership of all the lot owners. To protect the wetlands, the King County Parks, Planning and Resources Department Building and Land Development Division (BALD)

required a 50-foot buffer along the outer edge of Tract A and a 15-foot building setback extending onto the adjacent lots from the edge of the buffer.

At the inception of the neighborhood, the developer sought to establish a community trail around the perimeter of Tract A for shared use of all the neighborhood residents. Part of a trail already existed as an old logging road, and the developer sought to supplement that trail. In February 1987, the developer's engineer wrote BALD wetlands specialist Dyanne Sheldon to request approval of such a trail. The engineer explained that "[w]e would like to have . . . a proposed 6-foot-wide jogging path along the perimeter of the wetland which would be located generally along the most outer limits of the boundary so that no intrusion in the wetland would be contemplated." Sheldon determined that "the path can be located on the old roadways or at least 25 [feet] back from the wetland edge (within the buffer)."

In April 1987, BALD recommended to the county that it approve the Golden Ridge preliminary plat. In its report, BALD explained that a jogging path may be located on the old roadways or at least 25 feet back from the wetland edge within the 50-foot buffer. Details, including the path's "exact location, width, [and] surfacing," would be "worked out" with the BALD wetland specialist.

On June 8, 1987, the developer's engineer again wrote Sheldon, requesting approval of their "Open-Space Trail Plan" for the proposed plat. The engineer attached to the letter a map, showing a trail that "meanders well beyond the limit of the wetland area" but "is generally intended to run along the outside perimeter of the 50-foot buffer strip at the farthest extreme of the open-space

2

tract." A week later on June 16, Sheldon approved a trail no wider than 6 feet with an alignment that "shall be no more than 15 feet (furthest edge) from the back of the property lines adjacent to the wetland buffer." The developer memorialized this restriction in its "Declaration of Covenants, Conditions and Restrictions for Golden Ridge" (CCRs), filed August 17, 1987. The CCRs explain that a trail for pedestrians around the perimeter of Tract A "may be constructed in accordance with the approved Open Space/Trail Plan" on file with BALD. And the trail "is limited to an alignment along the outer limit of the 50-foot buffer strip" around Tract A.

In May 1988, the county approved the Golden Ridge plat. The plat map shows a 50-foot buffer on the perimeter of Tract A. The 50-foot buffer is entirely within Tract A and does not cross onto the bordering lots. And the plat map shows a 15-foot building setback extending onto each adjoining lot from the outermost edge of the 50-foot buffer. A note on the plat map references a path being built along the outer perimeter of the 50-foot buffer. And the plat map states that the lots are subject to the development's CCRs.[1]

On June 1, 1988, the developer recorded an "Agreement for Trail Easement" that "shall run with the land and shall be binding on all of the present owners, their heirs, successors and assigns." The easement burdened several lots adjoining Tract A, including lots 4, 7, 8, 9, 10, and 11, explaining that the

---

[1] The plat map states that it is subject to "restrictions, easements, and liability to assessments contained in [the] declaration of protective restrictions, easements, and assessments contained in instrument recorded under King County Recording No. 8708170816 and amended under Recording No. 8708181121." The CCRs for Golden Ridge is Recording No. 8708170816.

developer wanted to establish a trail for the mutual benefit and enjoyment of all the present and future owners. The agreement stated that the trail will be constructed "primarily" within the open-space 50-foot wetlands buffer but "may meander over, across, and upon certain portions of the hereinabove described lots." It created an easement for a

> 15-foot-wide strip of land across that portion of each of the herein
> above described lots within said Plats of Golden Ridge Divisions I
> and II, respectively, lying adjacent to and parallel with the common
> boundary line between each of said lots and the common open
> area described as "Tract A" on the said Plat of Golden Ridge
> Division No. I.

Once fully constructed, the trail did "meander" over and across several lots, including lot 4, within the confines of the Agreement for Trail Easement. In 1991, the Barones bought Golden Ridge lot 4. The Barones' deed disclosed that the lot was subject to any "easements, restrictions, reservations[,] covenants, agreements[,] right of way and zoning ordinances."

Over the ensuing years, the Barones advocated for closure of the trail, citing security concerns. They pointed out that the public could access the trail through nearby intersections and that users often left trash and cigarettes on the trail. At one point, a trail user burglarized the Barones' home. The "Golden Ridge Homeowners Association" created a committee to investigate and address the Barones' security concerns.

Around May 2021, a survey of the Barones' property showed that the trail crossed over their property. Then, in early 2022, the Barones installed a fence and locked gate across the trail to prevent users from crossing their property. Neighbors in the Golden Ridge community objected to the Barones blocking what

4

they viewed as an important "community amenity." They attempted to resolve the conflict directly with the Barones and asked them to remove the barriers, but the Barones refused. So, on November 17, 2022, neighbors Arlene and Sebastian Pierini, Patricia Read-Willliams and Matthew Williams, Adam Boyd and Megan Cooper, and Dalice Snider and John Cooper (collectively Plaintiffs) sued the Barones. They sought, among other things, a declaratory judgment that the trail easement is valid and enforceable, injunctive relief ordering the Barones to "remove all blockages and impediments" from the easement and restore the trail to its pre-2022 condition, and damages.

On July 7, 2023, the Plaintiffs moved for partial summary judgment. They argued that the Barones' actions violated the Agreement for Trail Easement and CCRs and amounted to a nuisance. The Barones responded that they knew of the trail at the time they purchased the property but "were not informed that a portion of the trail crossed [their] lot, nor did [they] review any documents stating that a portion of the trail crossed" lot 4. And they argued that the Agreement for Trail Easement is invalid because it altered the recorded plat without formally amending it.

On September 1, 2023, the trial court issued an order granting the Plaintiffs' motion for partial summary judgment. The court ruled that the trail easement is "valid and enforceable." It ordered that the Barones "remove all blockages and impediments to the free and unfettered use of the community trail" and that they refrain from "any and all actions to interfere with the peaceable and secure use of the community trail at issue." On November 4, 2024, the trial court

issued an order entering judgment for the Plaintiffs and granted them costs as the prevailing party.[2]

The Barones appeal.[3]

ANALYSIS

The Barones argue that the trial court erred by granting partial summary judgment and entering judgment for the Plaintiffs because the trail easement burdening their property is invalid. We disagree.

We review a trial court's order granting a motion for summary judgment de novo. *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 776, 249 P.3d 1044 (2011). We undertake the same inquiry as the trial court and consider the evidence and the reasonable inferences from it in a light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c); *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

Every conveyance of real estate and any interest or encumbrance on real estate must be by written deed, signed by the grantor and having the grantor's signature acknowledged. RCW 64.04.010, .020; *Berg v. Ting*, 125 Wn.2d 544, 551, 886 P.2d 564 (1995). The statute of frauds requires that any conveyance of

---

[2] The judgment notes that the parties informed the court that "they have fully and finally settled all issues of damages."

[3] The Barones first appealed on October 2, 2023 under No. 85832-7-1. But our court administrator dismissed that notice of appeal on joint agreement of the parties. The Barones then filed this appeal on December 3, 2024.

an interest in land, including an easement, must contain a description of the land sufficient to locate it without oral testimony. *Berg*, 125 Wn.2d at 551. In the case of an easement, the document need not establish the easement's actual location. *Id.* Only the "servient estate" must be described in sufficient legal terms. *Id.*

Here, the Agreement for Trail Easement describes the 15-foot easement in sufficient legal terms, and it specifically identifies the Barones' lot 4 as one of the servient estates. The agreement is written and signed by the grantor with his signature acknowledged. The parties do not dispute any of these facts. So, a valid easement exists.

Still, the Barones argue that the easement is invalid because it amounts to an unlawful attempt to alter the recorded plat.[4] According to the Barones, the plat map and CCRs call for a trail to be located only within Tract A itself. But the Barones misconstrue the purpose of the language in the plat map and CCRs.

The 50-foot wetlands buffer and 15-foot building setback identified in the plat map serve to protect the wetlands from human disturbance. *See, e.g.*, King

---

[4] Under RCW 58.17.215,

[w]hen any person is interested in the alteration of any subdivision or the altering of any portion thereof, except as provided in RCW 58.17.040(6), that person shall submit an application to request the alteration to the legislative authority of the city, town, or county where the subdivision is located. The application shall contain the signatures of the majority of those persons having an ownership interest of lots, tracts, parcels, sites, or divisions in the subject subdivision or portion to be altered. If the subdivision is subject to restrictive covenants which were filed at the time of the approval of the subdivision, and the application for alteration would result in the violation of a covenant, the application shall contain an agreement signed by all parties subject to the covenants providing that the parties agree to terminate or alter the relevant covenants to accomplish the purpose of the alteration of the subdivision or portion thereof.

7

County Code 21A.24.180 (zoning code requiring buffers and building setbacks "to protect critical area functions and values," including wetlands). And here, the plat map and CCRs' language restricting the location of the trail serves the same purpose.

BALD wetlands planner Sheldon described the trail's alignment limitation as "no more than 15 feet (furthest edge) from the back of the property lines adjacent to the wetland buffer." The developer's open-space plan and map ensured that the 6-foot-wide trail would not encroach on that restriction by placing the trail no closer to the wetland than the outer edge of the 50-foot buffer. The CCRs incorporate that language, and the plat map does the same. So, the easement permitting the trail to meander further away from the wetlands and onto private lots does not conflict with the restrictions under the plat map or CCRs.

The Barones argue that even if the easement does not conflict with the restrictions in the plat map and CCRs, it violates a section of the CCRs titled "Restrictions and Maintenance Responsibilities for Common Open Space/Tract 'A.' " That section concludes by saying that "improvements in the future shall not have an adverse impact on the abutting lot Owners to said Tract 'A' in any way." The Barones argue that the trail easement is invalid because it has an adverse impact on them. But that sentence relates to "the possibility of improvements above and beyond those contemplated in this section in the future." So, it does not apply to the already contemplated trail.

Because no disputed facts remain and the Plaintiffs show they are entitled to judgment as a matter of law, we affirm the trial court's orders granting their motion for partial summary judgment, granting them costs, and entering judgment.[5]

_____, ACJ

WE CONCUR:

_____          _____
Feldman, J.                Díaz, J.

---

[5] Plaintiffs request statutory attorney fees and costs on appeal under RAP 18.1(b) and RCW 4.84.080. Because the Plaintiffs are the prevailing party, we award them statutory fees and costs subject to RAP 14.2.